### A. E. Anderson v. Julia C. Silliman, Executrix, et al.

No. 777. Decided April 6, 1899.

**1. Assigning Error—Appellee Against Co-appellee.**

Where only one of the defendants appealed, making bond to plaintiff and his co-defendants as appellees, the latter can not assign errors as against plaintiff, their co-appellee. (P. 567.)

**2. Executory Sale—Lien Reserved in Note—Legal Title.**

A conveyance of land which did not reserve a lien or mention the giving of a note for purchase money, but in which such note was given and recited the reservation of a lien on the land for its payment, was executory only; the legal title remained with the grantor, and one who acquired both this title and the note could recover the land from the defaulting purchaser. (Pp. 562-568.)

**3. Same—Legal Title to Half Interest.**

The assignee of a purchase money note reserving a lien on land sold by two owners in common, who afterwards acquires the legal title remaining in one of the grantors, can recover the land on default in the payment as against the vendor who holds only the naked legal title to the other undivided half interest. (Whether he could recover, as against the vendee in default, such half interest to which he held no legal title, was a question not involved in this case.) (P. 568.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Anderson County.

*Anderson & Woolworth* and *Thos. B. Greenwood & Son*, for appellant.— The court erred in finding that plaintiff ought to recover the entire Blackerby 933 acres of land, and in rendering judgment in favor of plaintiff for same, subject alone to the interest of the assignees of Mrs. English: 1. Because in this action the plaintiff must recover on the strength of her own title. 2. Because the superior and legal title to the land remains in the vendor where the contract of sale is executory, and the mere transferee of the purchase money note has only a lien upon the land as security, but no title legal or equitable upon which to base an action for recovery of the land from the vendor or vendee. 3. Because a conveyance by an attorney ·in fact, beyond the scope of his

power and authority, confers no right on the principal, and the·power to sell and convey does not include the power to convey in discharge of a debt or claim against the principal, much less in discharge of the debt of the attorney, and does not include the power to convey without consideration inuring to the principal.

The powers of attorney from A. E. Anderson, under which the plaintiff deraigns her title, authorize J. K. Williams to "sell, transfer, and convey" the Bristow land. On April 10, 1884, Williams as attorney for Anderson conveyed to J. R. Blackerby 933 acres of the land in consideration of a note for $1100 reciting the vendor's lien. Williams, claiming a personal interest in the note, deposited it with J. M. Silliman as collateral for borrowed money. The court found that in June, 1886, Silliman also acquired the Anderson interest in the Blackerby note, but the evidence on this point is as set out in statement under first error assigned. On January 12, 1887, Williams for himself and as attorney for Anderson, in consideration of the satisfaction of his individual debts to Silliman, undertook to convey to Silliman the Blackerby 933 acres of land. Stephens v. Mathews, 69 Texas, 341; Elliott v. Blanc, 54 Texas, 216; Russell v. Kirkbride, 62 Texas, 456; Hamblen v. Folts, 70 Texas, 132; White v. Cole, 9 Texas Civ. App., 277; Lundy v. Pierson, 67 Texas, 233; Hughes v. Lane, 6 Texas, 289; Abernethy v. Bass, 9 Texas Civ. App., 239; Frost v. Cattle Co., 81 Texas, 505; Smith v. Powell, 23 S. W. Rep., 1109; 5 Texas Civ. App., 373-380; Folts v. Ferguson, 24 S. W. Rep., 659; Palmer v. Lumber Co., 3 Texas Civ. App., 474; Compress Co. v. Manufacturing Co., 64 Texas, 337; Reese v. Medlock, 27 Texas, 120; McAlpin v. Cassidy, 17 Texas, 449; Robson v. Watts, 11 Texas, 764; Collins v. Durward, 4 Texas Civ. App., 341.

The court erred in finding in effect that though the deed of Williams to Silliman, of date January 12, 1887, passed no right of Anderson to Silliman, yet that it did pass such a right as, connected with Silliman's ownership of the Blackerby note, entitled plaintiff to recover the entire Blackerby 933 acres in this action of trespass to try title. Stephens v. Mathews, 69 Texas, 341; Elliott v. Blanc, 54 Texas, 216.   ,

*Word & Gooch,* for appellees.—Mrs. Blackerby and all appellees except Mrs. Silliman make the following cross-assignment of error and proposition: The court below erred in finding that J. C. Silliman, executrix of J. M. Silliman, had title to the 933 acres of land by virtue of ownership of the Blackerby note of $1100 transferred to him by J. K. Williams; said note retaining vendor's lien on the 933 acres involved in this suit, and by virtue of the two conveyances by J. K. Williams to said Silliman of the legal and equitable title to said land.

*A. W. Gregg,* for Mrs. Silliman, appellee.—Where the owner of land sells it acting through an attorney in fact who owns one-half of the land, and takes as purchase money a negotiable note payable to the attorney or

bearer, and the attorney transfers the note before maturity to a third person, receiving from said third person money which is expended partly for the principal and partly for the agent, and the owner afterwards for value transfers his interest in the note to this same third person, and after this transfer the attorney for himself and his principal conveys the land to this same third person, the deed conveys the legal title to the land, and the attorney has such power to make the conveyance without consideration, and if a consideration is required the money advanced which was used for the benefit of both, and the value paid to the principal for the note constitute a sufficient consideration. And under such circumstances the original owner has extinguished what title he may have had in the land, and has no such interest as to prevent its recovery in a suit by the owner of the legal title against the purchaser and himself. Cassaday v. Frankland, 55 Texas, 452; same case, 62 Texas, 418; McCamly v. Waterhouse, 80 Texas, 340; Moore v. Glass, 25 S. W. Rep., 128.

Should the court not agree with us on the preceding propositions, we submit as a counter-proposition the following finding of the court, to wit: Anderson having parted with all interest in the Blackerby note had no further available interest in the land, and holding the legal title in trust for his assignee of the note, can not be heard to assert his empty right in bar of his beneficiaries' right to recover. The deed of Williams to Silliman, of date 1887, being valid upon its face, and having as its only infirmity a lack of consideration as to Anderson's interest, Blackerby is not in a position to take advantage of this defect, and as against Blackerby at least the legal title is in plaintiff and she ought to recover.

GAINES, CHIEF JUSTICE.—In this case the Court of Civil Appeals for the First Supreme Judicial District have certified to us the following statement and questions:

"One of the appellees, Mrs. Julia C. Silliman, in the capacity of executrix of the will of J. M. Silliman, deceased, brought this suit on the 26th day of October, 1897, to recover the land in controversy from Mrs. Susan C. Blackerby, Mrs. Emma F. Barton and husband, Mrs. Sallie Brown and husband, Robert Blackerby, Sam Blackerby, and Archibald E. Anderson. The petition contained the ordinary allegations proper to an action of trespass to try title, and all of the defendants answered by plea of not guilty. All of the defendants except Archibald E. Anderson are heirs of J. R. Blackerby, deceased, and have such title as he died possessed of. Their claim is asserted to a specific tract of 933 acres out of the larger tract sued for, which is 1850 acres out of the Thomas Bristow headright.

"The controversy between the plaintiff and Anderson involves interests claimed by them in the whole of the 1850 acres, but the facts affecting their claims to the 933 acres are somewhat different from those upon which the title to the remainder depends. Subject to the claim of persons not parties to the suit to an undivided interest in the whole

tract, plaintiff recovered, by the judgment appealed from, against all the defendants, the 933 acres tract and a lesser interest in the remainder, as will more fully appear below.

"Anderson and the heirs of Blackerby filed separate motions for new trial, upon the overruling of which all gave notice of appeal. Anderson alone gave an appeal bond payable to plaintiff and to his codefendants. The Blackerby heirs did not prosecute an appeal.

"The Thomas Bristow survey, of which the land in controversy is part, contains 17⅔ labors. Of this J. H. Reagan, prior to any transaction in question, owned an undivided locative interest of 782 acres, and Jonathan Anderson owned the balance. Anderson, on December 11, 1874, conveyed to Mary English an undivided interest of 333 acres in the Bristow survey, and this interest is owned by assignees of Mrs. English who are not parties to the suit. Subsequently, Robertson & Herndon, under Jonathan Anderson, acquired an undivided interest in the Bristow survey of 998 acres. Out of this they conveyed to Mrs. Amanda C. Snider, on March 29, 1876, an undivided interest of 333 acres. On June 11, 1879, Mrs. Amanda Snider and her husband executed to J. King Williams a power of attorney authorizing him to sell her interest. On March 17, 1883, Jonathan Anderson executed to Archibald E. Anderson, the defendant, a deed purporting to convey the entire Thomas Bristow survey except the Robertson & Herndon and Reagan interests of 782 and 665 acres respectively. On the same day, A. E. Anderson executed to J. King Williams his power of attorney empowering him to take charge of the land conveyed by Jonathan Anderson to A. E. Anderson, to pay taxes upon it, attend to its redemption from tax sales, to attend to the removal of all legal incumbrances of Anderson's title, to sell, transfer, and convey all or any part of said land at his, Williams', own discretion after quieting and removing incumbrances from the title of said land or any part thereof at his own discretion, and to receive and receipt for the same; to sue and be sued; to compromise and be compromised with. At the same time another instrument was executed by both Anderson and Williams, in which the powers conferred upon the latter were recited and in which the further agreements were stated as follows:

" 'And the said J. K. Williams agrees and obligates himself as agent and attorney to redeem said lands from the present incumbrance of tax sales as purchased by the State and to pay all other taxes due on said land as they may become due out of the proceeds of the sales of said lands, and at his own trouble and expense to have said land surveyed and designated from said undivided interest of Herndon & Robertson, and to subdivide said land so as to place it in market to the best advantage, and said Williams is also authorized to quiet and settle disputed titles with occupants or claimants to any part of said land by suit, sale or compromise as best he can, at his own discretion and with due diligence on his part; he is to be unlimited in his time of quieting and making

sale of said lands. And it is fully understood that this power of attorney is irrevocable.

" 'And it is further agreed and understood that said Williams is first to pay out and deduct from the first money realized out of the sale of any part of said land one-half of the different sums of money expended in the premises for taxes and otherwise, and said Williams being also authorized to sell for cash or on time as he may think best, and he is hereby bound to pay over to said Anderson one-half of all net proceeds of money, notes, or judgments as they may be realized in the sale of said land or any part thereof, and said Williams is to make no charge for and to be allowed nothing for his services and attention in the premises.

" 'And it is fully agreed and understood that said Williams is to bring no suit nor incur any cost at the expense of or to incumber Anderson in any way whatever without the consent and approbation of said Anderson, and in case said land or any part thereof should not be disposed of when said title becomes unincumbered, the same is to be equally divided between the said Anderson and Williams, or so much thereof as may remain unsold after all expenses of parties in the premises have been satisfied.

" 'And both parties bind themselves to use diligence in the consummation of this matter. And said Williams is to make a written report to said Anderson every six months of what he has done in the premises, and turn over to said Anderson the amounts due him with a true statement of the business.'

"The court below, in effect, found that prior to the sale to Blackerby stated below, Williams had performed the obligations assumed in this agreement, by partition with Robertson & Herndon and Reagan, discharging incumbrances, and surveying and platting the land, sufficiently to entitle him to receive such interest in the land as the contract stipulated he should receive upon performing his undertakings, and this court concludes that the evidence sustains the finding of fact and conclusion of law involved. On the 10th day of April, 1884, Williams, acting for himself and as attorney in fact for A. E. Anderson and Mrs. Snider, sold to J. R. Blackerby the 933 acres tract above referred to, executing to him an absolute deed, reciting the capacities in which Williams acted, which did not reserve any lien for the purchase money, and which is not shown to have recited the giving of a note therefor or that it was unpaid. The deed itself is not in evidence, its contents being proved as stated. At same time he took from Blackerby a note for the purchase money, of which the following is a copy:

" 'Palestine, Texas, April 10, 1884.

" 'On or before Jany. 1st next I promise to pay J. King Williams or bearer the sum of eleven hundred dollars with 12 per cent per annum from maturity, for value received in payment for (933) nine hundred & thirty-three acres of land, a part of the Thos. Bristow Hd. Rt. survey

in Anderson Co. this day purchased from said Williams, and this note holds a vendor's lien on the same until paid. Witness my hand this the above date.

(Signed)                           " 'J. R. Blackerby.

" 'Witness: Jno. W. Richardson, J. D. Royall.

" 'Endorsed: J. K. Williams. I leave this note with J. M. Silliman as collateral to secure him in the sum of $369.61 due him from me. This April 14, 1884, as evidenced by several notes given said Silliman by me. J. K. Williams.

" 'This note is left also as collateral for various other sums of money loaned me by J. M. Silliman aggregating several hundred dollars.'

"The note still remains wholly unpaid.

"Anderson ratified this sale to Blackerby and asserted an interest in the note taken for his interest in the land sold, and recognized that Williams owned the half of the amount thereof due for Anderson's interest in such land. As indicated by the indorsements on the note. it (or rather Williams' interest in it) was pledged to J. M. Silliman as security for money advanced by Silliman to Williams. On the 1st day of May, 1886, the note being in Silliman's hands under this pledge, Anderson executed to George Quest a written transfer reciting that he had sold to Quest his interest in it; and on June 8, 1886, Quest executed to Silliman his transfer of like effect. The court below found that the transfer from Anderson to Quest was intended as collateral security for a debt which the former owed the latter, which Anderson subsequently paid, and this finding is sustained; but that the transfer from Quest to Silliman was given in pursuance of a sale of the note and that Silliman took the absolute title. This court finds that the evidence is sufficient to warrant the conclusion that Silliman bought and paid $150 for Anderson's interest, being led to believe that Quest owned such interest in it by the transfer and that he acquired title to such interest. Quest gave Anderson credit for the $150. Silliman subsequently obtained Williams' interest in the note, as will appear below. Prior to the sale to Blackerby, and on August 16, 1883, Williams executed to J. M. Silliman, to secure a note for $200, given for borrowed money, a mortgage with power of sale on 1850 acres of the Thomas Bristow survey, reciting that the half of same was his individual property and that he had power of attorney from A. E. Anderson and A. C. Snider to control, sell, or dispose of the balance. This mortgage was foreclosed by trustee's sale and the land was purchased by and conveyed to J. H. Silliman January 3, 1885, and by him conveyed to J. M. Silliman January 5, 1887. There is evidence tending to show that Williams, in clearing away tax claims upon and tax sales of the land, paid out as much as $420 of the money obtained by him from Silliman upon the note pledged. The court below finds that a small amount of the money so raised was thus applied, but the amount is not stated, and the evidence is such that this court does not feel justified in finding the amount. Beyond this, there is nothing to show that

any of the money received from Silliman was used for Anderson's benefit. On the 12th day of January, 1887, Williams having received from Silliman money enough to pay for his (Williams') interest in the Blackerby note, executed a deed to Silliman for himself and as attorney in fact for Anderson and Mrs. Snider, whereby he undertook to convey to Silliman the 933 acres sold to Blackerby for a recited consideration of $1364 paid. After thus conveying the land, the deed continues as follows:

"'And I, J. K. Willaims, for myself and such agent, having sold said land to J. R. Blackerby, of Anderson County, Texas, and having taken his note for eleven hundred dollars, payable January 1, 1885, to bear interest at twelve (12 per cent) per annum after maturity, note dated April 10, 1884, with vendor's lien, and having placed said note in the hand of said Silliman as collateral for money advanced me at various times, and he having a lien on said note and land, and he having paid me in full this day for said note and land, I hereby transfer, convey, and release unto him, his heirs and assigns and legal representatives, all right, title, or interest I have on said land and note, and I hereby bind myself as such agent to warrant and defend the same against all persons or parties lawfully claiming a part or whole of the above property.'

"The court below finds that since this deed no claim has been asserted to this land by the Blackerbys, and this finding is not questioned. There was no consideration paid by Silliman for the deed at the time of its execution, and there was no other consideration than appears from the facts before stated. On the 20th day of September, 1897, Mrs. Snider and husband and Williams, for himself and as attorney in fact for A. E. Anderson, joined in a deed to Mrs. Silliman, executrix, ratifying and confirming the mortgage previously executed by Williams to J. M. Silliman and the sale thereunder, and conveying to Mrs. Silliman the land so sold. There was no consideration to Anderson for this beyond such as existed in the facts stated, and it was executed by Williams as his agent after he himself refused to execute it. The court below held that, by complying with his contract with Anderson, Williams became entitled to half of Anderson's interest in all of the land, and that this half interest passed to Silliman in the transactions stated; that the sale to Blackerby was executory, leaving legal title to Anderson's interest in him, and that his interest in the note for the purchase money having been acquired by Silliman, he had no available interest in the land, and that Williams' conveyance as his atorney in fact of January 12, 1887, without any new consideration, invested Silliman with sufficient title to enable him to recover the whole of the 933 acres less the English undivided interest.

"The questions certified relate to the title of the 933 acres alone, the facts and conclusions being stated so far as they are thought to affect the decision.

"The heirs of Blackerby assign errors in the judgment in favor of the plaintiff against them, claiming, in effect, that title to the 933 acres passed to their ancestor by the deed of the parties to him.

"Appellant Anderson assigns errors presenting the contention that the contract of sale to Blackerby was executory, and that the legal title remained in Anderson, but it nor any title ever vested in plaintiff's testator, and that hence he and not plaintiff should have been adjudged to be the owner of the 933 acres except Mrs. Snider's interest. He also claims that plaintiff should have recovered nothing beyond the Snider interest in any of the land, because Williams never complied with his contract so as to acquire right to any of the land, but this contention does not affect the questions certified. ·

"The questions are as follows:

"1. Was the sale to Blackerby executory, and did the superior title remain in the vendors? If so, was such superior title left in Anderson and Mrs. Snider, or was it in them and Williams, and would the acquisition by Silliman of Williams' and Snider's interest in the notes and this tract invest him with title sufficient to enable him to recover against Anderson and Blackerby one-half of Anderson's original interest as well as that of Mrs. Snider?

"2. We consider the answer to these questions material to the decision of the appeal of Anderson as well as the cross-assignments of the Blackerby heirs, but have stated the attitude of the parties in this court in order to put the further question, whether or not the Blackerby heirs are in a position to assign errors against their coappellee Silliman?

"3. If the contract was executory, did the legal title to Anderson's interest pass to Silliman, under the facts stated, by his acquisition of the note and the deed executed to him by Williams as attorney in fact in 1887?

"4. If Silliman did not acquire the legal title to Anderson's interest, has he, by virtue of his ownership of this note for which he has paid to Anderson's use $150, a right in equity, where the note is barred by limitation, and the original vendors and vendee are parties to the action, to avail himself of Anderson's legal title to recover the land, or any interest in it except the Snider interest?"

The questions certified are more readily disposed of by deciding the second question first; for if the heirs of Blackerby have not properly complained of the judgment rendered in favor of the appellee, Mrs. Silliman, against them, the question of her right to recover against them is not before the court. In Patterson v. Rogers, 53 Texas, 484, this court held that a defendant in ·a writ of error can not assign errors as against his codefendant, unless he has himself sued out a writ of error and given the statutory bond. The same rule applies in case of an appeal, as was decided in Jones v. Burgett, 46 Texas, 284. See also Horter v. Herndon, 35 S. W. Rep., 80. The rule also obtains in the Court of Appeals of Kentucky. McKay v. Mayes, 32 S. W. Rep., 606; Gilbert v. Moody, 36 S. W. Rep., 523. We answer that the heirs of Blackerby are not in position to assign errors as against their coappellee, Mrs. Silliman.

According to the well established rule of decision in this court, the

contract of sale of the land in controversy, evidenced by the deed of Williams in his own right and as attorney in fact of Anderson and Mrs. Snider, and the note which retained a lien for the purchase money, was executory. McKelvain v. Allen, 58 Texas, 387; Lundy v. Pierson, 67 Texas, 233. We are also of the opinion that the legal title remained in the vendors, to wit, Anderson, Mrs. Snider, and Williams; and that the acquisition by Silliman, the holder of the purchase money note, of the legal title of Williams and Mrs. Snider was sufficient, upon default in the payment of the note, to enable Silliman or his executrix to sue Anderson for the recovery of the land. White v. Cole, 87 Texas, 500. Anderson had parted with his interest in the note, and he had no interest in the land save the naked legal title. Silliman, if not entitled to claim the whole of the land, was entitled to an individual interest, and, as a tenant in common, had the right to recover against one holding merely the legal title. Therefore, in our opinion, Anderson can not complain of the judgment against him. The heirs of Blackerby not having appealed and not being entitled to file cross-assignments of error against their coappellee, Mrs. Silliman, can not raise the question of the correctness of the judgment as against them upon this appeal. We think that the plaintiff below had at all events the right to recover as to these heirs the interests held by Williams and Mrs. Snider, which were sold to Blackerby. Whether she was entitled to recover against them the interest that had belonged to Anderson, is a question in our opinion not necessary to be determined in order to decide the case as between Anderson and Mrs. Silliman.

Since we think the foregoing remarks sufficiently indicate our opinion upon the questions necessary to a decision of the case, they will be certified as our answer.