# WALTER SCOTT

## v.

## ISAAC A. HALL.

[Submitted April 5th, 1899. Decided April 15th, 1899. Filed September 26th, 1899.]

1. A judgment that plaintiff did in fact make a valid and enforceable contract at law is no bar to a suit in equity to relieve him from its effect on the ground of mistake.

2. A buyer having defaulted in payment of about one-half of the price, the seller, who had reserved the title, agreed to transfer the property for $525 cash, under the impression that the amount due was $650, when in fact it was $950. He discovered the mistake immediately, renounced the agreement, at once returned the check given in payment, and refused to make the transfer.—*Held,* defendant not having acted on the agreement to such an extent that a rescission would be to his prejudice, that equity would relieve the seller from the agreement.

Heard on bill and plea.

*Mr. Eugene Emley,* for the complainant.

*Mr. Michael Dunn,* for the defendant.

PITNEY, V. C.

The complainant, Walter Scott, by his bill asks to be relieved from the effect of an agreement of sale of chattels made by him on February 6th, 1896, to the defendant, Isaac A. Hall, on the ground that the same was entered into by one Thomas, as his agent, while laboring under a mistake of fact.

The plea is to the effect that in an action of replevin brought by complainant against two other persons, not parties hereto, to recover the same chattels, it was adjudged that the chattels did not belong to the plaintiff, the complainant herein.

The facts set out in the bill—and of course admitted by the plea—stated more in detail, are as follows:

Scott *v.* Hall.

The complainant is a manufacturer of printing presses and accompanying apparatus, carrying on business at Plainfield in this state, and in April, 1893, he sold and delivered to a publishing corporation, of which defendant was the president, doing business at Paterson, one or more printing presses and accompaniments (which are the chattels in question) for $1,800, upon the installment plan, employing for that purpose the machinery of a lease which reserved title in the vendor until all installments of rent, so called, were paid. Of that sum of $1,800, $250 was paid in cash, and the balance of $1,550 was secured by thirty-six notes of $43.05 each, with interest, maturing one in each month from the date thereof, the 15th of April, 1893.

After seventeen of these notes had been paid the publishing company defaulted, leaving unpaid nineteen notes aggregating $818, besides interest, which would swell the amount at the date of the transaction in question—February 6th, 1896—to $950, at least.

Complainant had been pressing for a settlement of this balance, and on the 6th of February, 1896, his collection agent, a Mr. Thomas, called on the defendant, Hall, at Paterson, and arranged with him to sell and transfer the chattels to him, Hall, for $525, which should be in full of the claim of the complainant against the publishing company. Before agreeing to accept said sum of $525, Thomas communicated by telephone with the office of complainant at Plainfield and inquired of the agent there in charge, the amount due from said publishing company upon said notes, and was informed by him that the sum due was only $650. Acting upon that supposition, he made a verbal agreement to sell the chattels to defendant for $525, which was, as he supposed, a deduction of $125 from the original price. Negotiations for the sale took place at Paterson in the office and presence of Mr. C. D., an attorney-at-law and counsel in that matter for defendant. After the sale was agreed upon the defendant left for his office in the same city and sent a messenger to his counsel with a check for the amount, which was placed at the disposal of Thomas. At that moment, and before the deed of transfer was signed or Thomas had done more than to take the check in his

hand temporarily, he was called over the telephone by the agent of complainant, who informed him that a mistake had been made in his statement of the amount due, and that over $950 was due from the publishing company on the contract of sale, and directed him to stop the sale. Thomas thereupon at once notified the defendant's counsel of the mistake, and that he would not carry out the sale, and refused to accept the check or any payment on account thereof.

The allegation is that Thomas was induced to enter into the agreement of sale for the price fixed entirely upon the basis that there was only $650 due from the publishing company, and that he was governed entirely by the amount of money so supposed to be due, and would not under any circumstances have sold the same for the sum of $525 had he known that the sum of $950 was still due thereon.

The prayer of the bill is that the agreement for sale of the machinery at the price named may be rescinded and set aside and declared null and void, and that the machinery may be declared to be the property of the complainant and the defendant directed to deliver the possession thereof to him and for other relief.

The plea is that on the 24th of November, 1896, before filing the bill, complainant brought a suit of replevin in the circuit court of Passaic county against one John Tully and one Thomas Murray to recover the possession of the chattels in question, by virtue of which writ the sheriff seized the goods, and immediately after the seizure Tully and Murray made written claim of property to the sheriff, and gave him a redelivery bond, the result of which was that the goods remained in the possession of Tully and Murray; that complainant filed his declaration claiming that the goods and chattels mentioned in the complainant's bill of complaint were his property, and were taken by the defendants unjustly and detained, &c.; to which declaration the defendants pleaded, denying that the said goods and chattels were the property of the complainant, the plaintiff in that cause.

Scott v. Hall.

The plea does not state that the defendants in the replevin suit, Tully and Murray, set up title in themselves.

Afterwards such proceedings were had in the cause that a jury rendered a verdict in favor of the defendants Tully and Murray, and against the plaintiff, Scott, and on the 24th of February, 1898, final judgment was entered in favor of the defendants and against the plaintiff.

The plea further avers that Tully and Murray on the trial of the cause claimed to have obtained possession of the chattels from and through the defendant Hall, and that the complainant herein insisted that he never sold and delivered said goods and chattels to said Hall, the defendant herein, and that the title and right to the possession of the same at the time of instituting the suit, and at the time of the trial, still belonged to and remained in the said complainant.

The plea does not state any adjudication that the title was in Tully and Murray, but it appears that they defended on the title of Hall, though Hall was not a party to the suit.

By consent of counsel, and in order to ascertain the precise issue of fact submitted to the jury, and upon what theory of the law it was presented to them by the learned judge, the stenographer's transcript of the evidence and the charge of the judge to the jury was handed up to the court. From that transcript it appears that testimony tending to establish the facts set out in the complainant's bill was admitted by the learned judge, but that he submitted the case to the jury upon the basis that an oral contract of sale was concluded between Thomas and the defendant in the presence of defendant's counsel, and that the only ground upon which the complainant could repudiate that oral contract at law was the statute of frauds, and that the validity of the contract depended upon the question whether Thomas, as complainant's agent, had actually taken the check of defendant into his hands and accepted it as a payment for the goods sold, and that question of fact be submitted to the jury. So that the only question submitted to the jury was whether or not the check had been in the hands of Thomas in such a manner as to satisfy the statute of frauds. That issue was found in favor

Scott v. Hall.

of the defendants. The question whether or not complainant had a right, under the circumstances, to be relieved in equity from the effect of that contract was not considered or submitted to the jury by the learned judge. All that he could have decided under the charge to the jury was that the complainant could not be relieved at law.

This view shows that the judgment at law cannot be any defence to the complainant's case in equity, if he have one. And this brings us to the merits of the bill itself. Was there any such mistake as ought to relieve the complainant in equity? It was not seriously disputed at the hearing but that the complainant was the holder of the legal title to the goods. That his title was simply that of a mortgagee is quite plain. The publishing company had already paid more than one-half of the original contract price. The object of the agent in pursuing the company and Mr. Hall, its president, was simply to collect the balance of $950 still due. His negotiations were on that basis, and he was willing, for the sake of cash down, to receive in payment a sum less than that amount. Such were his instructions, but he was not willing or authorized to deduct as much as $425. The transaction was simply that of giving up a bond and mortgage for the payment of a sum less than the amount due.

Now, it seems to me plain enough that, having agreed upon a sum based on $650 being due, when there was in fact $950 due, this court ought to relieve him from a contract made upon such mistaken basis, unless before notice the other party has so acted upon it as that it would be unjust to him to be compelled to submit to rescission.

Now, in this case notice was given immediately to defendant's counsel and while the affair was unfinished and not concluded in the manner in which the parties intended to conclude it, for it was their intention that there should be a written transfer of the title. And while we must conclude that the check was, for a short period of time, in the possession and control of the agent, still it was not intended to b taken away by him until he should have executed the written transfer It is plain from

the allegations of the bill, which must be held to be true, in connection with the charge of the judge, that Thomas did not feel that he had any right to the check until he had executed the written transfer, and in point of fact he never did take it away, but, as was said at the argument, it still remains in the hands of Mr. C. D., the counsel of the defendant, which is presisely the same as being in the hands of the defendant.

Now, I have said that the plea does not show that the defendants in the replevin suit established an actual transfer of title of the goods from the defendant herein to them, or that they assumed the position at all of *bona fide* purchasers without notice. So that there is no reason to believe that the defendant has in anywise altered his position by reason of the supposed ownership of the goods, but if he has done so he must have done so with full notice that the complainant repudiated the contract and had not in fact received or made use of the check.

Under these circumstances it seems to me clear enough, but contrary to my first impressions, that the plea must be overruled and that the complainant is entitled to a decree.