**STEWART v. TOLAR & DANIEL et al.
(No. 924.)**

(Court of Civil Appeals of Texas. Beaumont. April 9, 1923. Rehearing Denied April 18, 1923.)

**1. Limitation of actions ⬤=173—Defense of limitations is personal to debtor.**

Where defendants had purchased certain timber from a person since deceased, and plaintiff claimed to be entitled to the purchase money on the ground that deceased had given him the contract as a gift, and the administratrix intervened claiming the money for the estate, whereupon defendants paid it into the registry of the court, plaintiff could not interpose the two and four year statutes of limitation upon defendants' failure to interpose them, for the defense of limitations is personal to the debtor, and, where he fails to plead it, no one else can plead it for him.

**2. Gifts ⬤=49(1)—Evidence held not to require finding that gift of timber contract had been made to plaintiff by person since deceased.**

Where defendants had purchased certain timber from a person since deceased, and plaintiff claimed to be entitled to the purchase money on the ground that decedent had made a gift of the contract to him, the administratrix intervening claiming the money for the benefit of the estate, held, that the evidence was not so clear, consistent, and strong as to compel a finding by the trial judge that a gift was made as claimed by plaintiff.

**3. Appeal and error ⬤=878(7)—Parties failing to appeal not entitled to review if cross-assignments of error attacking judgment for coappellee.**

Defendants who failed to appeal are not entitled to have considered their cross-assignments of error attacking the judgment which is wholly in favor of their coappellee.

Appeal from District Court, Montgomery County; D. F. Singleton, Judge.

Action by C. B. Stewart against Tolar & Daniel and others, wherein Mrs. Elizabeth Moody intervened. Judgment for intervener, and plaintiff appeals. Affirmed.

W. N. Foster, of Conroe, for appellant.
Moody & Boyles, of Houston, and McCall & Crawford, of Conroe, for appellees.

HIGHTOWER, C. J. The appellant, C. B. Stewart, has made in his brief a statement of the nature and result of this suit, the correctness of which is not questioned by the appellees, and which we adopt, as follows:

"Plaintiff below, appellant here, sued the defendants, Tolar & Daniel, alleging that defendants by a written contract had purchased certain timber from Mrs. Laura Stewart Hardy at an agreed price of $4,000. $1,000 in cash and $3,000 in monthly installments of $150 each, and in his original petition and his first supplemental petition alleged that all payments had accrued and that said defendants were indebted to plaintiff in the sum of $3,000; it being alleged that the said Mrs. Laura Stewart Hardy for a valuable consideration had transferred said contract and all benefits thereunder to plaintiff.

"Said defendants, Tolar & Daniel, answered admitting said contract and plaintiff's allegations and impleaded Mrs. Elizabeth Poinbouef (now the intervener, Mrs. Elizabeth Moody) and her then husband, Julius Poinbouef, G. W. Tharp and C. W. Nugent, alleging that said parties were asserting some claim to the moneys accruing under said contract and had notified defendants not to make payment to plaintiff. Said defendants offered to pay the moneys accruing under said contract into the registry of the court. Later by a supplemental answer, said defendants also impleaded said Mrs. Elizabeth Poinbouef as temporary administratrix of the estate of Laura Stewart Hardy to the July term, 1915, and by further

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(250 S.W.)

pleading tendered and paid into the registry of the court the full sum of $3,000 in controversy in this suit.

"By original answer filed July 26, 1915, the defendant Mrs. Elizabeth Poinbouef (now Mrs. Elizabeth Moody), joined by her then husband, Julius Poinbouef, and Mrs. Elizabeth Poinbouef, as temporary administratrix of the estate of Elizabeth Stewart Hardy, entered merely a general denial to plaintiff's cause of action and the cross-action of said Tolar & Daniel. The defendants, G. W. Tharp and C. W. Nugent, likewise answered by general denial, exceptions and special pleas.

"On July 28, 1922, J. W. Hardy and A. W. Morris, Jr., filed an intervention, asserting claim to 20 per cent. of the $3,000 involved in said suit. And on September 11, 1922, Mrs. Elizabeth Moody joined pro forma by her husband, L. B. Moody, intervened and asserted title to and right of possession of the contract sued on by plaintiff and all moneys accruing thereunder, especially of the $3,000 that had theretofore been paid into the registry of the court by the defendants, Tolar & Daniel, and prayed for a judgment directing that said money be paid to her, in her representative capacity. Said intervention alleged the death of Mrs. Laura S. Hardy, May 14, 1914, the appointment of said intervener, Elizabeth Stewart Moody, as administratrix under said will by the county court of Harris county, an appeal to the district court of Harris county from the order appointing said intervener administratrix; that the district court of Harris county likewise admitted the will to probate and appointed the intervener administratrix; that an appeal was taken to the Court of Civil Appeals, which appeal remained pending until June 29, 1922, when said appeal was dismissed, and the judgment of the district court was thereupon certified to the county court of Harris county, for observance; and that said intervener qualified as such administratrix on August ——, 1922.

"By supplemental petition filed September 21, 1922, plaintiff demurred generally to the intervention of Mrs. Elizabeth Moody and her husband filed on September 11, 1922, and by way of special exception to said intervention urged that such intervention was barred by the statutes of limitations of one and two and four years, respectively.

"By final pleading the intervener, Mrs. Elizabeth Moody, alleged that she (being then Mrs. Elizabeth Poinbouef), on June ——, 1914, had been appointed temporary administratrix of the estate of Laura Stewart Hardy by the county court of Harris county, with power to collect assets and prosecute and defend suits, and that such appointment had been kept in force from term to term by proper orders, until intervener had qualified as permanent administratrix on August 2, 1922.

"The case was tried to the court without a jury, and on September 25, 1922, judgment was rendered adjudging that intervener as administratrix of the estate of Laura Stewart Hardy was entitled to the $3,000 in the registry of the court, and directing the clerk to pay same unto her and assessing costs against plaintiff and interveners, Hardy and Morris. * * * *"

The trial judge prepared and filed findings of fact and conclusions of law, as follows:

"First. Plaintiff claims that the timber contract between Mrs. L. S. Hardy and Tolar & Daniel was delivered to him as a gift by Mrs. Hardy on February 23, 1914.

"Second. On February 23, 1914, and for several years prior to that time, plaintiff was and had been the agent of Mrs. Hardy attending to various collections for her, and attending to other business affairs for her.

"Third. I find that said timber contract was not delivered to plaintiff by Mrs. Hardy as a gift, but was delivered to him by her with the intention that he should collect the payments as they became due thereunder, as her agent and for her account, and that Mrs. Hardy never intended at any time that such payments should belong to plaintiff.

"Fourth. I find that Mrs. L. S. Hardy died on May 14, 1914, that her last will was filed for probate in Harris county, Tex., on June 9, 1914, and at the same time Elizabeth Poinbouef, who was at that time the wife of Julius Poinbouef, but who has since become the wife of L. B. Moody, was appointed temporary administratrix with power to receive and collect all assets belonging to said estate, and to maintain and defend all such suits as might be necessary for such purpose, which temporary administration was continued in force by orders duly made by the county court of Harris county, from time to time, until the appointment and qualification of the permanent administratrix on August 2, 1922.

"Fifth. The will of Mrs. Hardy was contested, but it was admitted to probate by said county court in August, 1914. Contestants immediately appealed to the district court of Harris county, Tex., where it was again admitted to probate in January, 1915. The contestants immediately appealed to the Court of Civil Appeals at Galveston, in which court said appeal remained pending until June 29, 1922, at which time said appeal was dismissed. Thereafter Elizabeth Moody, who, under the name of Elizabeth Poinbouef, had been appointed administratrix with the will annexed by the county court of Harris county, Tex., and also by the district court of Harris county, Tex., duly qualified as such administratrix, and letters of administration were on August 2, 1922, issued to her.

"Sixth. I find that all payments due under said timber contract, and amounting in the aggregate to the sum of $3,000, have been paid by Tolar & Daniel into the registry of this court, and that said money is now in the possession of J. T. Rucks, clerk of this court.

"Seventh. Said money is the purchase price of timber which was the separate property of Mrs. L. S. Hardy.

#### "Conclusion of Law.

"Neither the plaintiff nor the interveners, Johnson Hardy and Alf Morris, Jr., having shown any right or title to the money in controversy herein, and it having been shown said money was paid under a contract stipulating that it should be paid to Mrs. L. S. Hardy, or order, as purchase price of timber belonging to her separate estate, I conclude as a matter of law that judgment should be entered herein in favor of intervener Elizabeth Moody, as administratrix of the estate of Mrs. L. S. Hardy, and against the plaintiff and all other-

interveners and parties to this suit, and it is accordingly so ordered."

In accordance with the findings and conclusion made by the trial judge, he rendered judgment in favor of Mrs. Elizabeth Moody in her capacity as administratrix of the estate of Laura Stewart Hardy, deceased, for the $3,000 in money which had been tendered by the defendants Tolar & Daniel and was in the registry of the court, as against all other parties to the suit. From such judgment the plaintiff, C. B. Stewart, alone has prosecuted this appeal.

Appellant's first assignment of error complains of the trial court's action in overruling his special exceptions to the intervention of Mrs. Elizabeth Moody as temporary administratrix of the estate of Mrs. Laura Stewart Hardy, deceased, interposing the statutes of limitation of two and four years.

[1] We have given this contention by appellant full consideration, and have reached the conclusion that the trial court was correct in overruling the special exception. It is very clear, it seems to us, that the cause of action here set up by the administratrix of Mrs. Hardy's estate was nothing more than a debt—obligation for money—owed the estate by the defendants, Tolar & Daniel, under the contract for the purchase of timber which Mrs. Hardy had sold them on February 23, 1914. The defendants, Tolar & Daniel, expressly admitted in their answer that they owed the money to somebody for this timber, but that there were several claimants of this money, and to protect themselves they caused an interpleader of the several parties and paid the money due for the timber into the registry of the court. The administratrix was not asserting any character of indebtedness against the appellant here, C. B. Stewart, nor did she recover any judgment against him personally, nor was any judgment sought against him personally. Appellant claimed to be entitled to this money owed by Tolar & Daniel, on the ground that Mrs. Stewart, before her death, gave it to him, and the whole controversy in the trial court was as to whom this money owed by Tolar & Daniel and paid into the registry of the court belonged. Tolar & Daniel were the only debtors, and they alone could interpose as a defense the pleas of limitation, which they did not do. It is elementary that the defense of limitation is one that is personal to the debtor, and where he fails to plead it, no one else can plead it for him. We think that this proposition of law is so well settled in this state that it needs no citation of authority in its support.

The second and fifth assignments may be considered and disposed of as one. By them together complaint is made that the judgment of the court is wholly without support in the evidence, and also because the judgment is so against the manifest weight and overwhelming and preponderance of the evidence upon the trial as to suggest that the court misapprehended or misunderstood the evidence, and because of such misunderstanding rendered an improper judgment. This contention has reference to the finding of fact by the trial court that the timber contract was not delivered to the plaintiff, Stewart, by Mrs. Hardy as a gift, but that it was delivered to him by her with the intention that he should collect the payments as they became due thereunder as her agent and for her account, and that Mrs. Hardy never intended that such payments should belong to the plaintiff.

As bearing upon appellant's second and fifth assignments of error and propositions thereunder, challenging the judgment of the trial court based on the finding of fact that the gift of the timber contract and proceeds as claimed by plaintiff was never made by Mrs. Hardy, the testimony adduced upon the trial on behalf of the plaintiff was as follows:

W. M. Tolar, of the firm of Tolar & Daniel, testified: That he was a member of the firm of Tolar & Daniel, and that his son, C. A. Tolar, who is an attorney at law, negotiated the deal with Mrs. Hardy, and that he (W. M. Tolar) was present at its consummation in the city of Houston; that the contract shown him was the one made, and was signed in duplicate; that at the time the contract was made a cash payment of $1,000 was made by him by check. And at this point we quote the witness:

"As well as I remember, at that time, she (referring to Mrs. Hardy) gave Claude Stewart the check and contract. I think she turned it over to him, as well as I remember. I don't remember exactly what she said about it. She told him something to do with that check, but I don't remember exactly what it was, and after she handed Mr. Claude the check, I think that she made that check over to him—I am not positive about it, but she gave him the check and the contract, as well as I remember, and I was sitting on her right side and she turned to me then and told me that the balance on this, the other timber, which was coming, was $3,000, she told me to pay that to Claude Stewart, she had given him that money, to pay it to Claude. That is about the substance of what she said. She told me to pay the balance of the $3,000 to Claude Stewart—she had given him that money."

The testimony of C. A. Tolar, who was a witness in behalf of plaintiff, was, in substance, as follows: That he is 39 years old, and is a graduate of a law school and formerly practiced law in Contor; that he was present when the contract between Mrs. Hardy and Tolar & Daniel was signed, and that he acted as the agent of Tolar & Daniel in negotiating the deal with Mrs. Hardy, and that he signed the contract in behalf of Tolar & Daniel; that the contract was signed in the city of Houston, and that there were present at the time the plaintiff, Claude Stewart, witness' father, W. M. Tolar, Mrs. Poin-

bouef, Mrs. Hardy, and himself. He testified that Mrs. Hardy took one copy of the contract and put a $1,000 check with it that witness' father had drawn in her favor, and that he thought she indorsed the check and turned it over to Claude Stewart. He further stated that Mrs. Hardy then gave the contract to Claude Stewart, and here again we quote:

"And in that connection, about the time she passed it over to Claude—the contract and check, I think they were together—she turned to my father, W. M. Tolar, and told him to make the payments under that contract to Claude, that it was his."

This witness, C. A. Tolar, also testified that when Tolar & Daniel first concluded to buy the timber from Mrs. Hardy, witness, as their agent and acting in their behalf, spoke to appellant, C. B. Stewart, about it, and informed him that Tolar & Daniel would like to purchase the timber, and that appellant at the time stated to witness, in substance, that he doubted whether Mrs. Hardy would sell the timber, but that if she would do so at all he (appellant) was about the only person who could persuade her to sell the timber, and that appellant agreed to go with witness to see Mrs. Hardy about purchasing the timber, and that they in fact went and saw Mrs. Hardy. He further testified that at the time he and appellant spoke to Mrs. Hardy about purchasing the timber for Tolar & Daniel, it had not been surveyed or estimated, and that this would have to be done, and she advised that appellant have the timber estimated before any contract of sale would be entered into, and that thereupon the timber was estimated, and that witness and appellant and witness' father again went to Houston to close the deal with Mrs. Hardy, with the result that it was closed, as above shown. This witness also testified, in substance, that at another time than on February 23, 1914, Mrs. Hardy stated to him that the money due by Tolar & Daniel for the timber purchased from her belonged to appellant, C. B. Stewart.

On cross-examination, this witness also testified that about May 1, 1914, he saw Mrs. Hardy and asked her, in substance, whether in the event the weather should get bad and Tolar & Daniel should not be able to cut the timber as rapidly as they hoped to do, she would be willing to extend the dates of payment as had been agreed upon.

Mrs. Elizabeth Moody testified, in substance, that she was present when the contract between Mrs. Hardy and Tolar & Daniel for the sale of the timber was executed, and that after the same was signed, the contract was handed to W. M. Tolar, and that he put the same in his pocket, remarking to Mrs. Hardy that he would take the same to Contor and have it recorded and would return it to her by Claude Stewart.

Mrs. Hardy died May 14, 1914, and there is nothing in this record suggesting that appellant ever set up any claim to the money owed by Tolar & Daniel for the timber purchased from Mrs. Hardy prior to her death, or that he set up any such claim at any time prior to the filing of this suit by him some year or more after the claimed gift. And in his petition in this case appellant alleged that the contract between Tolar & Daniel and Mrs. Hardy for the purchase and sale of the timber was transferred and assigned to him by Mrs. Hardy for a valuable consideration; whereas, upon the trial of the case, the contention on his part was that the contract and the rights, etc., were a gift to him by Mrs. Hardy.

The evidence also shows that at the time the deal was consummated between Mrs. Hardy and Tolar & Daniel in Houston, on February 23, 1914, it was understood that appellant owned a tract of 179 acres of timber, which was included in the contract, and for this reason $265 of the whole consideration that was paid Mrs. Hardy by Tolar & Daniel was for this 179 acres, and belonged to appellant. The check for $1,000, which was given by W. M. Tolar to Mrs. Hardy, at the time the contract was closed, was indorsed by Mrs. Hardy and handed to appellant, and the undisputed facts show that appellant cashed this check and took out for himself the $265 for his 179 acres of timber, and deposited that amount to his own credit. While the evidence shows that Mrs. Hardy, at the time of the transaction in question, indorsed the $1,000 check to appellant, it also shows, without dispute, that she did not make any indorsement or written transfer of the contract itself to him.

The evidence further shows, without dispute, and the trial court found, that appellant, for more than six years prior to Mrs. Hardy's death, was her confidential agent, and represented her in her land transactions and matters of collection, and that this relation continued to the time of the death of Mrs. Hardy.

During the trial of a case (presumably involving the will contest) in Harris county, the appellant, while a witness on the stand, testified, in substance, at one stage of the proceeding, that at the time the contract between Mrs. Hardy and Tolar & Daniel was made and turned over to him by Mrs. Hardy, he understood that the same was not given to him as his own or that he was to have the proceeds of the timber sold, but, on the contrary, he understood at that time that the contract was turned over to him by Mrs. Hardy for collection, as her agent. At another stage of the same proceeding, however, he did testify that he afterwards learned from Mrs. Hardy that she intended to give him the contract and money due from Tolar & Daniel under it as his own.

In their original answer in this case, Tolar

& Daniel, among other things, alleged, in substance, that they did not know whether the money which the plaintiff, C. B. Stewart, claimed they owed him on the timber transaction, was due to him or not, and that they did not have such information as would justify them in either denying or affirming his claim to such money.

The above-mentioned facts and circumstances, as we have detailed them, constitute substantially all the evidence in the record before us bearing upon the issue of fact determined by the trial court in favor of appellee, administratrix, which is here assailed by appellant, and now the question is: Was the evidence, as a whole, such as required the trial judge, sitting as a trier of the fact, to find that the proceeds or purchase price of the timber under the contract between Mrs. Hardy and Tolar & Daniel was given to appellant by Mrs. Hardy on February 23, 1914, as claimed by him? If this question should be answered in the affirmative, it would be this court's duty to reverse and render this judgment in favor of appellant. If, on the other hand, the evidence, measured by the rule of law governing the question, would not compel such finding by the trial judge, it is the duty of this court to affirm the judgment. As we have already shown and as the trial court found, the timber sold by Mrs. Hardy to Tolar & Daniel was her separate property, and unless she made a gift of the deferred purchase money of $3,000 to appellant on February 23, 1914, as claimed by him, the administratrix of Mrs. Hardy was entitled to recover this money from Tolar & Daniel, as determined by the trial court. Let us see what the rule of law is as to the quantum of proof in a case of this character.

In Cyc. vol. 20, at page 1223, the author lays down the rule as follows:

"As a general rule, to establish a gift inter vivos there must be a preponderance of clear, explicit and convincing evidence in support of every element needed to constitute a valid gift. It is necessary to establish by this kind of evidence, competency of donor, delivery, acceptance, and the parting of the owner of his control, or right of dominion over the subject of the gift. This rule is especially applicable where the gift is not asserted until after the donor's death, and where a confidential relation existed between the parties, some decisions holding that in such cases the evidence must be as clear as that required to sustain a gift, causa mortis, and must be so cogent as to leave no reasonable doubt in the mind of an unbiased person that demand is a proper one."

This rule, thus laid down by Cyc., is quoted with approval by the Court of Civil Appeals of Kentucky, in the case of Andersons' Adm'r v. Darland, 192 Ky. 624, 234 S. W. 207.

In Ruling Case Law, vol. 12, p. 973, it is said:

"The evidence of the circumstances of a gift of an unindorsed chose in action should be full, clear and convincing. When the claim of a gift is not asserted until after the death of the alleged donor it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift."

In Hale v. Hale, 189 Ky. 171, 224 S. W. 1078, it was said:

"It is equally true, that, since the gifts of this character furnish a ready means for the perpetration of fraud, the evidence necessary to establish all of the essentials to complete them must be clear and convincing. [Citing authorities.] And while the declaration of the donor before the gift as to his intention to make it, and after the gift to the effect that he made it, are relevant testimony upon the issue, they are insufficient alone to establish the gift. [Citing authorities.]"

In the case of McCune v. Daniels (Mo. App.) 225 S. W. 1022, the court quotes with approval from In re O'Connell, 33 App. Div. 483, 53 N. Y. Supp. 748, as follows:

"He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of clear and probative force, which clearly establishes every element of a valid gift."

In Jones v. Falls (Mo. App.) 73 S. W. 903, it was said:

"The general rule requiring gifts inter vivos to be established by the conclusive evidence is especially applicable where such gift is not asserted until after the death of the alleged donor, and gifts thus preferred after death of the alleged donor are regarded with suspicion by the court."

The quotation just given was cited with approval by the court in Reynolds v. Hanson (Mo. App.) 191 S. W. 1030.

In the case of Fouts v. Nance, 66 Okl. 266, 155 Pac. 611, the court stated the rule as follows:

"It is the general rule in every jurisdiction that after the death of the donor, in order to establish a gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element needed to constitute a valid gift."

In Castelhun v. San Francisco Savings & Loan Society, 205 Pac. 66, the appellate court of California thus states the rule:

"The rule is also established that, where a gift is not asserted until after the death of the donor, every element necessary to constitute the gift must be sustained by explicit and convincing evidence."

The Supreme Court of Iowa, in Runnels v. Anderson, 186 Iowa, 1380, 173 N. W. 94, states the rule as follows:

"The burden of proof is on the one who asserts the gift to prove all the essential elements to consummate the gift, and this evidence must be clear and satisfactory, and, as some of the cases say, 'conclusive.' * * *

' "The evidence of the gift must be direct, positive, express, and unambiguous," and must show that the gift has been completely executed.' "

In the case of Martin v. Martin, 207 S. W. 193,. the Court of Civil Appeals at Galveston, speaking through Justice Lane, used this language:

"Alleged parol gifts, asserted for the first time after the death of the donor, to be upheld ought to be above question or suspicion at all times; but more especially when they render inoperative, as they would in this case, the provisions of the will made by the alleged donor. The evidence to support them ought to be full and clear and free from uncertainty, for the temptation to seize upon statements made by the deceased alleged donor might be too often yielded to under the influence of interest or promptings of avarice, and produce most grievous wrongs. The facility with which such alleged gifts are sometimes proved is suggestive of great caution in weighing the evidence adduced to sustain them. To doubt them ought to be to deny them."

In that case, Justice Lane quoted with approval this language from Whalen v. Milholland, 89 Md. 212, 43 Atl. 50, 44 L. R. A. 208:

"Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property, asserted to have been made while he was living, it is but a salutary precaution which demands explicit and convincing evidence of every element needed to constitute a valid donation, whether it be a donation inter vivos or mortis causa. Even then fraudulent claims may prevail, but the rigid requirement of the clearest proof will at least diminish the number."

In Combest v. Wall (Tex. Civ. App.) 102 S. W. 147, the court said:

"It has been said that, to establish a gift by parol, the proof must be clear and free from all ambiguity and doubt."

[2] The above citations constitute only a very few of the many adjudicated cases showing the strictness with which a litigant, asserting for the first time a gift of property after the alleged donor's death, is required to prove the claim, and we think that it is not stating the rule too strongly to say that in such a case as this the evidence as a whole, in order to compel a finding by the trial judge that the gift was made as claimed by appellant, ought to be so clear, consistent, and strong as to satisfy his mind that the gift was made as claimed, and where the evidence falls short of this, the trial judge's finding against the claimed gift ought not to be disturbed. We do not believe that we would be justified in this case, from the evidence as a whole, in concluding that it compelled a finding by the trial judge that the gift was made, as claimed by appellant.

The suggestion made by able counsel for appellant, that the trial judge must have misunderstood or misapprehended the evidence on the point, and therefore found against the claimed gift, appears hardly reasonable to us, because the evidence was so brief as to leave no room for confusion.

Feeling that we would be unauthorized to disturb the trial court's finding on the only material issue of fact in this case, and there being no error pointed out by any other of appellant's assignments, we have concluded that the judgment must be affirmed, and it has been so ordered.

[3] We have not overlooked the fact that the interveners Alf Morris, Jr., and J. W. Hardy have filed cross-assignments of error, under which they contend that the trial judge was in error in not rendering judgment in their favor for 20 per cent. of the money involved in this controversy. These defendants did not appeal from the judgment, however, which was in favor of their coappellee, Mrs. Moody, administratrix, etc., and in the absence of an appeal they are not entitled to have considered their cross-assignments of error attacking the judgment wholly in favor of their coappellee. Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576; Lauchheimer v. Coop, 99 Tex. 386, 89 S. W. 1061, 90 S. W. 1098; Western National Bank v. White, 62 Tex. Civ. App. 374, 131 S. W. 828.

The judgment as to all parties is affirmed.