| 67 | 233 |
|----|-----|
| 83 | 45 |
| 67 | 233 |
| 92 | 568 |

## No. 2156.

## J. P. LUNDY ET AL. *v.* J. G. W. PIERSON AND WIFE.

1. PURCHASE MONEY LIEN.—The reservation of a purchase money lien in the notes given for land renders the sale executory in the same manner as if the reservation was contained in the deed itself, and leaves the contract of sale subject to rescission by the vendor at any time for the non-payment of purchase money.
2. REGISTRATION—NOTICE—PURCHASER.—The registration of a judgment in the county where the land sold under execution issuing under it is situate, when the judgment was rendered in another county, can not affect the rights of a purchaser from the judgment debtor which vested by deed made before the rendition of the judgment, although his deed was recorded in the county after registration of the judgment; provided, the purchaser at execution sale, who was the creditor and who credited his bid on the execution, knew or could have known (having been put on inquiry) that the judgment debtor had conveyed his title.
3. RESCISSION OF EXECUTORY CONTRACT.—A judgment creditor who seeks satisfaction of his debt by the sale of land under execution which had been conveyed to the debtor by another under an executory contract which reserved a lien for unpaid purchase money, can not complain tha the executory contract was in fraud of the creditors of the vendor, or question his right to rescind the executory contract in default of payment of purchase money.
4. DEPOSITIONS.—The deposition of a witness written out by the officer taking them, and properly returned after being sworn to and subscribed by the witness, may be read in evidence, though the answers be literally the same used by the same witness in a former deposition, and which were in the handwriting of the party to the suit at whose instance they were taken.

APPEAL from Trinity. Tried below before the Hon. Benton Randolph.

*Nunn & Denny*, for appellants, that the depositions of Mrs. Pierson and Daily should have been excluded, cited Floyd v. Rice, 28 Texas, 342, and Ballard v. Perry, 28 Texas, 363. That the stipulation in Daily's deed, waiving the lien in case Brown should sell the land was inconsistent with the retention of the lien, they cited Pickett v. Bullock, 52 New Hampshire, 354; Hutton v. Bragg, 7 Taunton, 14; Brown et al. v. Gilman, 4 Wheaton.

*Denson & Burnett* and *Robb & Stephenson*, for appellees, that the depositions were properly admitted, cited Revised Statutes, section 2235; Marx v. Heidenheimer, 63 Texas, 306, and cases cited; Weeks on Depositions, section 378. That the contract was executory, they cited McKelvain v. Allen, 58 Texas, 387, and cases cited. That no one but a creditor of Daily, or a subsequent bona fide purchaser could attack the conveyance in question, they cited Claybrooks v. Kelly, 61 Texas, 637; DeGarca v. Galvan, 55 Texas, 53. That even if there was fraud in the conveyance by Daily to Brown it was abandoned by Brown's reconveyance, which divested all interest of Brown, cited Bump on Fraudulent Conveyances, third edition, 452; Matthews v. Buck, 43 Maine, 267, 268; Parker v. Tiffany, 52 Illinois, 286; Harvey v. Varney, 98 Massachusetts, 120.

WILLIE, CHIEF JUSTICE. Appellees sued Lundy and Carpenter to recover a league of land, claiming the same under title derived from Daniel Daily, who conveyed to E. J. Brown, and the latter conveyed to appellee, J. G. W. Pierson. It was proved that this conveyance was in trust for the wife of Pierson, the other appellee in this cause. Appellants claimed the land under purchase at sheriff's sale made by virtue of an execution issued out of the county court of Wise county. Appellant Carpenter, in 1878, recovered a judgment against E. J. Brown, in said county court, but Brown, having appealed, the judgment was reversed and reformed by the Court of Appeals, and certified to the county court for observance.

There was proof tending to show that upon receipt of the mandate in the cause, the county court reformed its judgment to correspond to that of the Court of Appeals, and upon this judgment of the county court the execution issued. An abstract of the judgment rendered in the county court was recorded in Trinity county, where the land lay, and the land was sold under the execution before the deed from Brown to Pierson was placed upon record.

There was proof, however, to show that Carpenter's attorneys were, before and at the time of the execution sale, in possession of facts which gave them notice of the deed from Brown to Pierson. The money bid by Carpenter's agent for the land was paid by crediting the amount of the bid upon the execution. At the same time that Daily conveyed this land to Brown he also deeded to him several other tracts, but was still the owner of other lands

within the State.   Daily owed several security debts at the time, and the lands conveyed to Brown were of considerable value. Brown and Pierson were sons-in-law of Daily, and their wives held claims against their father growing out of his use and disposition since her death of their mother's interest in the community property of Daily and herself.   The deed to Pierson was in satisfaction of his wife's claim against her father.   The deed from Daily to Brown recited a consideration of five promissory notes, each for the sum of one thousand two hundred and five dollars, but reserved no express lien for their payment; but a lien was reserved in the face of the purchase money notes.

The cause was submitted to the judge upon the law and the facts, and he rendered a judgment in favor of Pierson and wife for a recovery of the lands, and from this judgment the defendants appealed to this court.

The judge below put in writing his conclusions of law and fact, and they form part of the record in the cause.   The objections to those conclusions taken by the appellants will be considered in the order they appear in their brief.

It is complained that the court erred in finding that the evidence was sufficient to show that the notes given by Brown to Daily retained the vendor's lien.   One witness, J. G. W. Pierson, states positively that the lien was retained in the notes, and he had the best possible opportunity of knowing the fact as he once had the notes in possession.   His testimony is not contradicted as to this, but is strengthened by the evidence of Brown, the maker of the notes, that it was the intention of the parties that the notes should retain the vendor's lien. If under these circumstances the court chose to believe the statement of the witness, we can not say that it erred, though the witness, when first examined by written interrogatories, did not mention the fact.   It does not appear that he was then questioned upon the subject, or his attention called to it in any manner whatever.

The court found that the deed from Daily to Brown was made with an honest purpose, and in this the appellants say there was error.   Whilst the proof showed that Daily was liable with others for some security debts, it also showed that he retained title to a considerable amount of property, which was subject to execution for these debts.   But had the court found that the deed was made for the purpose of defrauding Daily's creditors, we can not see how this would have benefited the case of appellants.   No one could have complained of Daily's fraud except

the parties defrauded, and they make no complaint whatever. The appellants were not creditors of Daily, but of Brown. If they should succeed in setting aside Daily's deed to Brown for fraud, they revest title in the former; and this does not profit them, as it places the property beyond the reach of Brown's creditors, and subjects it to those of Daily only.

It is also said that the evidence does not support the finding of the judge that the deed from Brown to Pierson was in satisfaction of Mrs. Pierson's interest in her mother's estate. If this finding is incorrect, we can not see what prejudice has resulted therefrom to the appellants. Daily had a right to give his property to his daughter if he chose, so he did not thereby defraud his creditors; and of this no one but his creditors could complain. But there was abundant proof that the deed was made for the purpose found by the court. It is so positively stated by three witnesses; and the previous settlement spoken of was a mere release, made without consideration, for the purpose of allowing Daily to make a good title to some of the property, which he wished to convey. This was no bar to his making another deed in payment of the indebtedness.

Appellants complain that the court erred in finding that Carpenter had actual notice of the deed to Pierson from Brown. It was shown that Cundiff had control of the judgment as Carpenter's agent. It was further shown that Sparkman & Newton were the attorneys of Carpenter, representing him in the collection of the judgment. It was proved that Brown told Cundiff in the spring of 1880, which was after the judgment was obtained and a few months before the execution was levied, that the land in controversy had been conveyed to Pierson. Pierson himself stated that in July or August, 1880, a month or two before the levy was made, he spoke to Cundiff about the settlement, and mentioned his wife's interest in the lands, and Cundiff seemed to be posted about the settlement. Two witnesses also proved that Newton, of the firm of Sparkman & Newton, had due notice of the conveyance by Brown of the land in controversy.

There was some conflict of evidence upon the subject, but the court below found in favor of the appellee's witnesses; and, as there is evidence to support the finding, we can not disturb it. Some of the witnesses did not inform Carpenter's agents specially as to the land sued for, but they described the land conveyed to Mrs. Pierson sufficiently to put the appellants upon inquiry as to whether Brown had title to the property. The information given

by others was sufficiently definite to amount to full notice, without further inquiry.

As the appellant had actual notice, or sufficient notice, to put them upon inquiry as to Brown's title, it is unimportant whether or not the court found correctly that the record of the county court judgment had no effect as against the appellees, claiming, as they did, under the deed from Brown, which was unregistered at the time the judgment was recorded.   It may, however, be proper to say that when a judgment is recovered and finally rendered or reformed in a court of final resort, the judgment of that court would seem to be the proper one to be recorded and enforced by execution.

It is settled by this court that the reservation of a purchase money lien in the notes given for land renders the sale executory in the same manner as if the reservation were contained in the deed itself. (McKelvain v. Allen, 58 Texas, 387.)   The contract between Daily and Brown was, therefore, executory, and subject to rescission by Daily at any time, upon failure of the payment of the purchase money.

But whether the contract was executed or executory, the parties had a right to rescind the same as they did under the circumstances of this case.   It is not claimed that any fraud was committed by Brown upon his creditors by means of the rescission; and, if any was perpetrated by Daily upon his creditors, the rescission did not place them in any worse position than they were before it took place.   It was as much subject to their debts in the hands of Pierson as when held in the name of Brown.   But they are not making complaint, and the appellants can not avail themselves of a right which belonged to Daily's creditors alone to deprive the latter of their recourse upon the land in controversy by selling it in satisfaction of the claims of the creditors of Brown.   This would be to use the weapon of another for his own destruction, to deprive him of his rights by means which were intended for their protection.

What we have said renders it unnecessary to consider the finding of the court as to the inadequacy of the price paid for the land by Carpenter.   In our view Pierson and wife had a good title to the land at the time of the sheriff's sale, of which Carpenter had notice; and that sale could not give him any right to the land, no matter what price he may have paid for it.

There was no error in allowing the depositions of George Daily and Mrs. Pierson to be read to the jury.   These depositions were

written out by the officer before whom they were taken, and were sworn to and subscribed by the witnesses, which is all the statute requires. It matters not that they were literally the same as the depositions of the same witnesses previously taken, which were in the handwriting of Pierson. The witnesses twice swear to the same state of facts, and this certainly did not weaken their evidence or throw suspicion on it. It was a mere reiteration under oath of what they had once before declared to be true. The objections, too, were to the form and manner of taking the answers, and should have been made in writing and filed, with notice to the opposite party, before the trial commenced, which was not done.

It may be further added that any fact material to the appellee's case, proved by these depositions, was abundantly established by other witnesses; and, the cause having been tried by the court alone, any error in their admission would not reverse the judgment.

This disposes of all the assignments of error which demand our attention. There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 14, 1887.