BUCKLEY et al. v. RUNGE et al.†

(Court of Civil Appeals of Texas. March 29,
1911. Rehearing Denied April 13, 1911.)

1. VENDOR AND PURCHASER (§ 253*)—REME-
DIES OF PURCHASER—LIENS — RESERVATION
IN NOTES.

The reservation in purchase-money notes of an express vendor's lien is sufficient to preserve to the vendor the superior title to the land until the notes are paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 638; Dec. Dig. § 253.*]

2. VENDOR AND PURCHASER (§ 253*)—LIEN—
RESERVATION IN NOTE.

The recital in a note given by a purchaser of land that it was secured by the southeast southwest quarter of the northeast block, etc., is a sufficient reservation of an express lien on the property; the superior title remaining in the vendor until the note is paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 638, 639; Dec. Dig. § 253.*]

3. VENDOR AND PURCHASER (§ 265*) — VEN-
DOR'S LIEN—BONA FIDE PURCHASER—NO-
TICE—CONSTRUCTIVE NOTICE.

A purchaser of land whose immediate grantor did not have the record title, his deed having been lost and never recorded, is bound to take notice that a vendor of his grantor has a lien on the land securing notes for the unpaid purchase price, for vendor's lien notes are as effectual as recitals in a deed to reserve such a

lien, and the absence of record title in the purchaser's grantor should put him on inquiry.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 704; Dec. Dig. § 265.*]

4. VENDOR AND PURCHASER (§ 265*)—LIEN—NOTICE—CONSTRUCTIVE NOTICE.

Persons, not bona fide purchasers of land, who know that purchase-money notes have not been paid, have notice as a matter of law of the reservation of a vendor's lien by the unpaid notes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 703; Dec. Dig. § 265.*]

5. VENDOR AND PURCHASER (§ 299*)—NONPAYMENT OF PRICE — RECOVERY OF LAND — LACHES.

Where the purchase-money notes reserving an express lien on the land were not paid for nearly 30 years, but there was evidence of continuous demands for payment by the vendor or his heirs and promises to pay on the part of the purchaser, the delay in the assertion of the superior title resulting from the lien was explained, and the heirs of the vendor were not barred of their right to recover the land on such superior title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 840; Dec. Dig. § 299.*]

6. APPEAL AND ERROR (§ 544*) — RECORD — BILLS OF EXCEPTION—NECESSITY.

The refusal of the trial court to allow certain defendants to strike the jury list is not presented for review by a statement of facts, which can present only errors in rulings on evidence; a bill of exceptions being necessary to present error in refusing to allow the striking of the jury list.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2412; Dec. Dig. § 544.*]

7. VENDOR AND PURCHASER (§ 299*) — VENDOR'S LIEN—RECOVERY OF POSSESSION—EVIDENCE—ADMISSIBILITY.

In trespass to try title by the heirs of a deceased vendor, a deed executed by one of the heirs transferring his interest to the plaintiff is admissible in evidence without any special pleading, either as an after-acquired title or because it was executed before institution of the suit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 299.*]

8. VENDOR AND PURCHASER (§ 237*) — BONA FIDE PURCHASER—CONSIDERATION.

A past indebtedness not being a sufficient consideration to constitute one an innocent purchaser of land for value, evidence of such consideration was properly excluded in an action where the issue was whether a certain one was a bona fide purchaser for value.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 577–579; Dec. Dig. § 237.*]

9. PAYMENT (§ 66*) — EVIDENCE — REBUTTAL OF PRESUMPTION.

In trespass to try title, plaintiff's title being based upon the reservation of a vendor's lien in purchase-money notes given for the purchase of land over 30 years ago, evidence that these notes were, in the probate court, treated as part of the assets of the estate of the deceased vendor, was admissible to rebut the presumption of payment arising from lapse of time.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 176–188; Dec. Dig. § 66.*]

10. WITNESSES (§ 143*)—COMPETENCY—PRIVILEGED COMMUNICATION.

One who parted with all his interest in certain lands before suit was filed is not incompetent, under Rev. St. 1895, art. 2302, providing that in actions by executors or representatives of decedents, neither party may testify against the other as to transactions with decedent, etc.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 619–624; Dec. Dig. § 143.*]

11. APPEAL AND ERROR (§ 1048*)—REVIEW—HARMLESS ERROR.

The asking of a question objected to as leading is not prejudicial error, where it does not appear that it was answered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4141; Dec. Dig. § 1048.*]

12. COSTS (§ 101*) — JOINT DEFENDANTS — GUARDIAN AD LITEM.

In an action of trespass to try title, where the plaintiffs not only sued certain known claimants, but served with process by publication the unknown heirs of a deceased claimant, and had a guardian ad litem appointed for them, the fee of the attorney who acted as guardian ad litem should be taxed against the plaintiffs, and not the other defendants, as they had nothing to do with bringing these parties into the case.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 394–396; Dec. Dig. § 101.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by L. H. Runge and others against John Buckley and others. From a judgment for plaintiffs, defendants appeal. Modified and affirmed.

See, also, 122 S. W. 596.

Stewarts, Geo. T. Burgess, and John E. Quaid, for appellants. W. B. Lockhart and James B. & Charles J. Stubbs, for appellees.

REESE, J. This is a suit in trespass to try title by L. H. Runge and others against Ed. McCarthy, administrator of D. G. Kelly, deceased, the unknown heirs of said Kelly, W. C. Morris, D. J. Buckley, Thomas Buckley, and John Buckley to recover certain lots in the city of Galveston. The case was tried with a jury, and the trial resulted in a verdict and judgment in favor of plaintiffs, from which judgment defendants appeal.

Defendants McCarthy, administrator, and the unknown heirs of D. G. Kelly have filed no assignment of errors, and as to them the judgment will be affirmed without further consideration, which disposes of all the property sued for except lots 10, 11, 12, 13, and 14, and the west one-fourth of lot 9 in the northeast block of outlot 70, which are claimed by the other defendants, and as to which this appeal is properly prosecuted by them.

This is the second appeal. Upon the former trial the court instructed a verdict for plaintiffs, and the judgment was reversed, and the cause remanded by this court, on the ground that the issues as to the payment of the notes executed by Kelly for the land, and of innocent purchaser without notice interposed by Morris and John Buckley, should have been submitted to the jury. Buckley v. Runge, 122 S. W. 597. Upon this trial these issues were submitted to the jury, which found in favor of plaintiffs on both

issues. Our conclusions of fact are as follows:

Henry Runge, ancestor of appellees, was the owner of the property in controversy; his title being properly of record at his death. Henry Runge died leaving a will naming independent executors, which was duly probated, and acting under the powers conferred, in 1874, the executors sold and conveyed to D. G. Kelly the property in controversy. This deed was never recorded. Kelly was drowned in the storm of 1900, which also destroyed his home and all of his papers. The sale to Kelly was on credit; he executing notes for the purchase money. Among the notes so executed were two notes for $1,200, each dated "Galveston, October 12, 1874," and due respectively in one and two years from date, payable "to the order of myself," signed "Daniel G. Kelly," and indorsed "Daniel G. Kelly." The first due of said notes shows a payment of $250 on the day of its date, also interest paid to October 12, 1878. The second due of the notes shows interest paid to October 12, 1878. Each of the notes contained the following recital on its face: "Secured by S. E. and S. W. quarter of N. E. Bl. of outlot 70"—which includes the property in controversy. These notes have never been paid. They were inventoried as part of the assets of the estate of Henry Runge, and afterwards as assets of the estate of his children, appellees herein, by their guardian. Efforts were made to collect them from D. G. Kelly up to the time of his death; but he was never able to pay. Efforts were also made to collect them from the appellants Buckley after Kelly's death. They have always remained in the hands of Runge's executors and those claiming as heirs of Runge, and the evidence is amply sufficient to rebut whatever presumption of payment may arise from lapse of time. The notes are now the property of the appellees.

Henry Runge, one of the heirs, conveyed to L. H. Runge, another of the heirs and one of the plaintiffs, all of his right, title, and interest in and to the property in controversy. As before stated, the deed from the executors of Henry Runge to D. G. Kelly has been lost—supposed to have been lost—with all of his other papers in the 1900 storm. The evidence authorizes the conclusion that Kelly did not consider that the property belonged to him until he paid these notes, and for that reason never recorded the deed. The recital in the notes above referred to was intended to evidence the fact that the notes, having been given for the purchase money of these lots, were secured by an express vendor's lien thereon. What reservation of lien there was in the executor's deed, if any, could not be shown.

At the time of the conveyance to Kelly he was a married man; his wife being the mother of appellants Buckley by a former marriage. After Kelly's death his estate was administered upon by appellant Ed. McCarthy, and in the probate court, upon partition between his estate and the heirs of Mrs. Kelly, the appellants Buckley, the property in controversy was set apart to D. J., Thomas, and John Buckley on September 22, 1904. D. J. Buckley sold and conveyed to John Buckley his interest in the lots in controversy, and on the 8th of February, 1904, Thomas Buckley sold and conveyed to W. C. Morris his one-third interest. The consideration of this deed was $150, which was paid in cash. The consideration of the deed from D. J. Buckley to John Buckley was an existing indebtedness from the grantor to the grantee of $150. The jury found that both Morris and John Buckley had notice at the time of the purchase and conveyance to them respectively of the facts that these notes had not been paid. At that time the records showed title down to Henry Runge, and no conveyance out of him.

Under their first, fourth, fifth, sixth, and eighteenth assignments of error appellants submit the general proposition, germane to each of said assignments, that the recitals in the notes "secured by southeast and southwest one-fourth of northeast block of outlot 70" did not retain the superior title in plaintiffs' ancestor, nor create an express vendor's lien." To support the proposition appellants cite Baker v. Compton, 52 Tex. 252; Ransom v. Brown, 63 Tex. 188; and Carson v. Sweatt, 57 Tex. 380.

[1] It is well settled that a reservation in the purchase-money notes of an express vendor's lien is sufficient to reserve in the grantor the superior title to the land, until the notes are paid. McKelvain v. Allen, 58 Tex. 387; Lundy v. Pierson, 67 Tex. 237, 2 S. W. 737. This proposition is not denied by appellants; but they contend that the recitals referred to in the purchase-money notes are not sufficient to show a reservation of the lien.

[2] In the cases cited by appellants there was shown to be no reservation of the vendor's lien in the deeds. The recitals in the notes only showed that they were given for the purchase money, and it was held that this did not create an express contract lien such as was necessary to reserve in the vendor the superior title. This recital was only evidence of a fact which furnishes a basis of the equitable vendor's lien, which is very different in its consequences, under the decision in this state, from the lien given expressly by contract of the parties in a sale of land on a credit. We are of the opinion that the recitals in the purchase-money notes, of the fact that they are secured by the land conveyed, evidences an express contract that they shall be so secured, and this is in substance all that is necessary to create the express contract lien on the land for the unpaid purchase money, with the consequence that the superior title remains in the vendor, and his successors

in title holding the notes, until they are paid.

Probably the most strenuously contested issue in the case is that of whether Morris is entitled to be protected as an innocent purchaser for value without notice. This contention rests upon two grounds: First, that Morris (or Minor Stewart, who made the purchase for himself merely in Morris' name) had no notice, when he bought and paid value, of the existence of the express vendor's lien; and, second, that he did not know that the notes were unpaid. As to the first, it was shown that Minor Stewart saw these notes in the hands of appellees' attorney, who held them for collection, and was apprised of their contents. Whether this was before or after he bought is left in doubt from his testimony, who, it was shown, bought the lots for himself, taking the deed in Morris' name, for his own convenience. This witness stated that he thought this was after he had bought, and that he was satisfied that it was after; but he testified that he had a very poor memory as to time, and that he was not willing to swear that he had not seen the notes before he took the deed to the land, that he was quite positive about the matter, but might be mistaken as to the fact whether he had seen the notes before he bought. He testified that he did not remember whether, at the time he took the deed to Morris, he had any knowledge of the recitals in the notes, that he did not think that before he took the deed he visited at the office of Mr. Stubbs, appellants' attorney, and discussed the matter with him, but that he was not ready to swear that he did not do so. He was a party to the suit and an interested witness, and, taking his entire testimony, if there was nothing else to show notice to him before he bought, both of the contents of the notes and that they were unpaid, we think it presented an issue for the jury. That he had such notice at some time, either immediately before or immediately after he took the deed from Buckley, is clear from his' own testimony, and, although in some of his statements he testifies in positive terms that this notice was conveyed to him after he took the deed, other statements made by him throw doubt on this fact. The probate records showed the claim of the appellants, that the notes were unpaid, and it is a reasonable inference from Stewart's testimony that he was acquainted with these records. He owned and kept in his office an abstract of land titles of Galveston county, which contained a complete abstract of probate proceedings as well as conveyances of land. We think the evidence, only a summary of part of which is here shown, was sufficient to show either actual notice to Stewart or knowledge of such facts as would have put a reasonably prudent man on inquiry as to the existence of the facts; that is, of the contents of the notes, and that they were not paid. It is clear that the slightest inquiry would have resulted in full knowledge.

[3] But, so far as notice of the fact of appellees' superior title growing out of the express lien is concerned, we think that the evidence disclosed by the public records, with which in fact Stewart was familiar, was constructive notice. The record title in Henry Runge, Kelly's vendor, was clear, and there was no deed of record out of him. Stewart testified that he had actual knowledge of this. Without such actual knowledge, as it was part of his chain of title, he had constructive notice by the records themselves. He knew that Kelly's title was from Runge, that his deed was not of record, and was lost. It being the law that the reservation of the lien in the notes was as effectual as in the deed, to preserve the superior title of the vendor, and that the recitals in the notes referred to were effectual for that purpose, this case is exactly parallel with that of Gilbough v. Runge, 99 Tex. 539, 91 S. W. 566, 122 Am. St. Rep. 659. In that case Runge had sold the land to Gilbough, reserving the vendor's lien in the deed, which, however, had not been recorded. Gilbough sold the land to others, who had no notice of the reservation of the vendor's lien or that the purchase-money notes were unpaid. After waiting for several years upon Gilbough's promise to pay, Runge brought suit on the notes against Gilbough, making his vendees, who were in possession, parties. Defendants pleaded limitation, whereupon Runge amended his petition seeking to recover the land. The court says: "When Runge conveyed the land to Gilbough, reserving a lien in the deed, the vendee acquired the right of possession and the right to transfer his possession and such title as he had to his vendees Bailey and Hampton, who, however, could acquire no greater right against Runge than Gilbough himself had. The title of Bailey and Hampton was held by them in subordination to the right reserved by Runge in the deed to Gilbough, and Bailey and Hampton were bound to take notice of the terms of the deed under which Gilbough held, although it was not recorded, and they actually knew nothing of it. Spencer v. Jones, 92 Tex. 519 [50 S. W. 118, 71 Am. St. Rep. 870]; Flewellen v. Cochran, 19 Tex. Civ. App. 499 [48 S. W. 39]; Clark v. Adams, 80 Tex. 674 [16 S. W. 552]; Roosevelt v. Davis, 49 Tex. 472."

[4] Both Morris and John Buckley were bound to take notice of the recitals in the notes given for the purchase money under the deed to Kelly, just as much as though such express reservation of the lien rested upon the recitals in the deed.

The seventh and eighth assignments of error are overruled. This disposes also of the ninth and tenth and seventeenth assignments of error, which present substantially the same questions.

By assignments of error from 11 to 16, appellant Morris complains that the court erred in that part of its charge which required the jury to find for plaintiffs as against Morris if the jury found that he had notice at or before his purchase from Buckley that the Kelly notes were unpaid. Appellant's contention is that the charge was erroneous in that Morris was entitled to the land unless he had notice not only that the notes were not paid, but also that the unpaid notes contained the recitals which we have held to be sufficient as an express reservation of the vendor's lien. The charge was not error, as upon the authority of Gilbough v. Runge, supra, Morris was required to take notice of these recitals, as we have undertaken to show in the discussion of the previous assignments. This affected him with notice as a matter of law of this fact. In our opinion on the former appeal we held otherwise; but that case was decided without consideration of Gilbough v. Runge, which leads us to a different conclusion on this appeal.

[5] By the fourth proposition under these assignments appellants contend that, after the length of time that had elapsed in this case from the maturity of the notes to the institution of this suit, appellees should not recover the land, under his superior title as vendor with lien expressly reserved, against one who has paid value for the property, even with knowledge of the lien. We overrule this contention and refer to the opinion on the former appeal of this case for our reasons therefor, without repeating them. 122 S. W. 598.

There is no merit in the twenty-first assignment of error. The probate court, in the administration of the estate of D. G. Kelly, had no power to adjudicate the questions involved in this case.

[6] If the action of the trial court in refusing to allow Morris and Buckley to strike the jury list independent of the other defendant was error, the error could not be availed of without a proper bill of exceptions. What appellant relies upon is a memorandum in the statement of facts that such ruling was made and exceptions taken. Only errors in the admission or exclusion of evidence and exceptions thereto can thus be shown. The ruling objected to has no place in the statement of facts. Rule 56, District Court Rules (94 Tex. 676, 67 S. W. xxiv).

[7] Appellants objected to the introduction of the deed from Henry Runge to L. H. Runge, on the ground that it was dated after the alleged ouster, as stated in the petition. It is not contended that the deed was not executed before the institution of the suit, and we are of the opinion that, if the record showed that it was executed after the alleged ouster, it could be availed of by appellees without specially pleading it as an after-acquired title; but it is a sufficient answer to the assignment that the record fails to show the date of this deed. The twenty-fourth assignment presenting the point is without merit.

[8] There was no prejudicial error in refusing to allow John Buckley to testify as to the consideration paid by him to Dan Buckley for his interest. This evidence was offered in support of John Buckley's claim that he was an innocent purchaser, as to that interest, for value and without notice. The testimony offered showed that the consideration paid was the precedent indebtedness of Dan Buckley to John. This was not such a consideration as is necessary to constitute one an innocent purchaser for value, and the evidence was not material to any issue in the case and could not have helped appellant John Buckley. McKamey v. Thorp, 61 Tex. 652; Overstreet v. Manning, 67 Tex. 661, 4 S. W. 248; Bonner v. Grigsby, 84 Tex. 332, 19 S. W. 511, 31 Am. St. Rep. 48.

[9] There was no error in admitting in evidence the probate records in which it appeared that the notes referred to had been treated as forming a part of the assets of the estate of Henry Runge, and of his heirs, and as being unpaid. The notes are properly described, except that one of them is said to be for $1,200 and the other for $950. This last was clearly the note for $1,200 upon which a credit of $250 was indorsed as of the day of its date, thus reducing it to $950. The evidence was admissible for the purpose of rebutting the presumption of payment arising from the great lapse of time.

[10] Henry Runge was not disqualified to testify as to conversation between himself and Kelly with regard to the notes, under article 2302, R. S. He had previous to the institution of the suit parted with all interest in the property and was not a party to the suit, nor interested in it in any way.

[11] It does not appear from the assignment or statement what the answer of the witness was to the question objected to as leading, by the twenty-ninth assignment, nor that he answered at all. The mere asking of the question, which is all that appears, could not have prejudiced appellants. The assignment is overruled.

The thirtieth assignment has no merit and is overruled.

[12] We are inclined to think that there is merit in the thirty-first assignment of error, complaining of the judgment taxing the fee of the attorney ad litem, appointed by the court to represent the unknown heirs of D. G. Kelly, deceased, against appellants Buckley and Morris. These parties were cited by publication, and it thereby became necessary to appoint the attorney to represent them. Appellants had nothing to do with bringing them into the case. No personal judgment for costs could be rendered against them. It is a necessary and proper burden which should be assumed by appellees to pay the attorney's fee. They desired a judgment against these unknown heirs. Appellants

had no connection in interest with them. The cost of the attorney's fee should have been taxed against appellees, and the judgment should be so reformed, and it is so ordered. We find no other error, and the judgment as reformed as aforesaid is affirmed, at cost of appellees.

Reformed and affirmed.