**T. H. MASTIN & CO. et al. v. KIRBY LUMBER CO.**

**MEACHUM v. TEMPLE LUMBER CO. et al.**

No. 609.

District Court, S. D. Texas, Houston Division.
April 29, 1936.

Andrews, Kelley, Kurth & Campbell, E. J. Fountain, Jr., and Daffan Gilmer, all of Houston, Tex., for receiver of Kirby Lumber Co.

Roy L. Arterbury, of Houston, Tex., and R. E. Minton, of Lufkin, Tex., for Temple Lumber Co., et al.

KENNERLY, District Judge.

By supplemental and ancillary bill in the nature of an original bill in this receivership cause, the receiver of the Kirby Lumber Company (for brevity called receiver) sues the Temple Lumber Company, a Texas corporation, with its domicile in the Eastern District of Texas (for brevity called Temple Company), and certain persons who are heirs at law of T. L. L. Temple, some of whom reside in and are citizens of Texas, and some of whom reside in and are citizens of other states, to recover title and possession of 100 acres of land located partly in San Augustine county and partly in Sabine county, in the Eastern District of Texas (all are collectively for brevity called respondents). T. B. Roberts, who resides in San Augustine county, in the Eastern District of Texas, and is a citizen of Texas (for

brevity called Roberts), is made a party defendant upon his alleged warranty of the title of the land to Kirby Lumber Company.

The case, after having been brought to issue, went to a master for hearing and report, and he has reported in favor of the Temple Company, and the receiver has filed exceptions to the report. This is a hearing on such exceptions.

■ 1. This being an ancillary and supplemental bill in the nature of an original bill by the receiver against persons claiming adversely property in the hands of the receiver, there is jurisdiction here. Riehle v. Margolies, 279 U.S. 218, 220, 49 S.Ct. 310, 73 L.Ed. 669, 671; White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67; Ex parte Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689; Wabash Railroad Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Central Union Trust Co. v. Anderson County, 268 U.S. 93, 45 S.Ct. 427, 69 L.Ed. 862; Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815; Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672; Bien v. Robinson, 208 U.S. 423, 28 S.Ct. 379, 52 L.Ed. 556; Jenkins v. Dillingham (C.C.A.) 175 F. 1021, certiorari denied 220 U.S. 620, 31 S.Ct. 723, 55 L. Ed. 613; Keith Lumber Co. v. Houston Oil Co. (C.C.A.) 257 F. 1, 4, certiorari denied 250 U.S. 666, 40 S.Ct. 13, 63 L.Ed. 1197; Gordon v. Dillingham (C.C.A.) 158 F. 1019; Hollander v. Heaslip (C.C.A.) 222 F. 808, 811; Knox & Lewis v. Alwood (D.C.) 228 F. 753; Hume v. City of New York (C.C.A.) 255 F. 488; Franklin Opera House Co. v. Armstrong (Gunby v. Armstrong) (C.C.A.) 133 F. 417, 427; Bottom v. National Railway Building & Loan Association (C.C.) 123 F. 744; Peck v. Elliott (C.C.A.) 79 F. 10, 38 L.R.A. 616; Ross-Meehan Brake-Shoe Foundry Co. v. Southern Malleable Iron Co. (C.C.) 72 F. 957; Cherry v. Insull Utility Investments (D.C.) 58 F.(2d) 1022; Green-Boots Construction Co. v. Hays (C.C.A.) 56 F.(2d) 829; Kreitmeyer v. Baldwin Drainage District (D.C.) 2 F.Supp. 208; Samuel v. Houston Oil Co. (Tex.Civ.App.) 193 S.W. 246 (writ of error refused).

2. The master found J. B. Drawhorn to be the common source of title to the land in question as between receiver and all respondents. I do not agree with him, but since the title of all parties comes through Drawhorn, the discussion will for the present proceed upon that theory.

From the report of the master and the evidence before him, the title of the Temple Company et al. is shown to be as follows:

(a) Warranty Deed, dated December 22, 1879, from J. B. Drawhorn to L. S. Wright, covering the land in controversy, and reciting the payment of a consideration of $50. The evidence shows, and the master finds, however, that Wright in fact paid nothing for the land, but gave his vendor's lien note for the consideration, payable in the fall of the year (1880) following the date of the deed. By this, it is meant that in the note, Drawhorn reserved the vendor's lien to secure the unpaid purchase money. Wright's testimony is as follows:

"Q. Did you or not ever see a deed purporting to be signed by said Drawhorn to you, purporting to convey to you 100 acres south of Tebo Creek out. of the Northwest corner of a tract out of the William Roberts League purporting to contain 633⅓ acres of land? A. I did, he made me a deed.

"Q. If you have said you did so purchase the 100 acres of land, did you pay for it then in cash or otherwise? A. I never did pay a cent on it.

"Q. If you did not then pay for it, when were you to do so? A. I bought it in the fall of 1879, and I was to make a payment on it the next fall.

"Q. If you did not then pay for it, was the purchase money secured or not in any manner, and if so, how? A. I gave a Vendor's Lien note as a security for the purchase price."

(b) The evidence clearly shows, and the master in effect finds, that Wright did not file his deed for record, and that when his note came due (in the fall of 1880, or thereabouts), he was unable to pay it, and returned the deed to Drawhorn, and Drawhorn returned to him his note, both agreeing to a rescission of the sale, and that both the deed and note should be destroyed. Wright destroyed the note, but Drawhorn, for some reason, did not destroy the deed. Wright's testimony makes this clear:

"Q. If you have said you gave a Vendor's Lien Note expressly retaining a lien to secure the purchase money, did you or not thereafter pay said note? A. No sir, he gave me the note back, and I gave him the deed back.

"Q. If you have said you did not pay said note, then what, if anything was done about it, and when? A. In the following fall I went to him, told him I was not able to pay on the land. I told him I was not able to pay on the land, and I asked him to take the land back. He agreed to do so, and I gave him the deed back, and he gave me the note back. I destroyed the note, and he was to destroy the deed; this was our agreement. When we agreed to this I asked him how we would manage the exchange, and he asked me if the deed had been recorded: I told him it had not. He then told me that I could return the deed to him, and he would give me back my note, and we would destroy both of them. I did as promised, and destroyed the note, but he did not destroy the deed. I do not know why he did not destroy the deed, as he had promised to do.

"Q. How long after this did you remain in the neighborhood? A. I stayed there two years longer on Dr. Cobb's place, and then moved seven or eight miles away.

"Q. Did you or not make any improvements on the land in question? A. No sir I made no improvements.

"Q. If you moved away from that neighborhood, where and how far did you go? A. I moved seven or eight miles away near what is known as Mott Prairie."

(c) Drawhorn, on October 20, 1881, conveyed the land to P. B. Watson by general warranty deed, and the Temple Company et al. hold under Watson by a regular chain of conveyances of the title. [2, 3] The deed from Drawhorn to Wright and the note from Wright to Drawhorn must be construed together. When so construed, they constitute an executory contract between Drawhorn and Wright, with the superior title and the legal title remaining in Drawhorn, and with only an equity passing to and in Wright. Dunlap's Adm'r v. Wright, 11 Tex. 597, 599, 62 Am.Dec. 506; Baker v. Ramey, 27 Tex. 52, 53; Peters v. Clements, 46 Tex. 114, 115; Baker v. Clepper, 26 Tex. 629, 634, 84 Am.Dec. 591; McKelvain v. Allen, 58 Tex. 383, 387; Lundy v. Pierson, 67 Tex. 233, 237, 2 S.W. 737; Anderson v. Silliman, 92 Tex. 560, 567, 50 S.W. 576, 577. The facts in Anderson v. Silliman last cited are shown by the following quotation therefrom to be substantially similar to those here (italics mine):

"On the 10th day of April, 1884, Williams, acting for himself and as attorney in fact for A. E. Anderson and Mrs. Snider, sold to J. R. Blackerby the 933-acre tract above referred to, executing to him an *absolute deed,* reciting the capacities in which Williams acted, which did not reserve any lien for the purchase money, *and which is not shown to have recited the giving of a note therefor, or that it was unpaid.* The deed itself is not in evidence, its contents being proved as stated. At same time he took from Blackerby a note for the purchase money, of which the following is a copy:

"'Palestine, Texas, April 10, 1884.

"'On or before Jany. 1st next, I promise to pay J. King Williams or bearer the sum of eleven hundred dollars, with 12 per cent per annum from maturity, for value received, in payment for (933) nine hundred & thirty-three acres of land, a part of the Thos. Bristow Hd. Rt. survey in Anderson Co., this day purchased from said Williams; and this note holds a vendor's lien on the same until paid.'"

The holding of the court is in this language (italics mine):

"According to the well-established rule of decision in this court, the contract of sale of the land in controversy, evidenced by the deed of Williams in his own right, and as attorney in fact of Anderson and Mrs. Snider, and the note which retained a lien for the purchase money, *was executory.* McKelvain v. Allen, 58 Tex. 383, 387; Lundy v. Pierson, 67 Tex. 233, 2 S.W. 737. We are also of the opinion that the *legal title* remained in the vendors, to wit, Anderson, Mrs. Snider, and Williams."

Wright having paid nothing on the land, having made no improvements nor other expenditures thereon, having only an equity therein, and having agreed to a rescission of the sale, and there being then no person to complain, whatever title he had passed back into Drawhorn. The rule respecting rescission under such circumstances is well settled in Texas. Lundy v. Pierson, supra; Rooney v. Porch (Tex.Com.App.) 239 S.W. 910, 911; Scott & Carmody v. Canon (Tex.Com.App.) 240 S.W. 304, 305; Lanier v. Foust, 81 Tex. 186, 188, 16 S.W. 994.

Drawhorn, October 20, 1881, conveyed to Watson, under whom Temple Company claims.

Whether receiver, holding under a deed from Wright to Mrs. Roberts, dated Sep-

tember 20, 1905, nearly twenty-five years after the title to the property thus passed back to Drawhorn and from him to Watson, has rights superior to Watson and to Temple Company, who claims under Watson, is next to be determined.

3. From the report of the master and the evidence before him, the title of the receiver is shown to be as follows:

(a) Special warranty deed from L. S. Wright to Mrs. W. F. Roberts (wife of I. E. Roberts), dated September 20, 1905, covering the land in controversy, and executed under circumstances detailed by Wright in his depositions. Asked about the deed from Drawhorn to him, and which he had returned to Drawhorn when their trade was rescinded, he gives the circumstances under which he again saw it nearly twenty-five years after the date of the rescission:

"I had been living there about three years when Bill Edgar, brother-in-law, paid me a visit, and brought me the old deed. He told me that Crit Stubblefield had given him the deed, and told him to bring it to me, that he had found it in the safe when he, Stubblefield, had taken over the store that he was then running. I told Edgar that this was the old deed that I had given back to Drawhorn and he was supposed to destroy it. I told Edgar that I would just put the deed in the trunk and keep it in case any one ever called for it; I first thought of tearing it up, but I decided this was not my job to do, so I just kept the deed.

"Two or three years later Lige Roberts, Tax Assessor of San Augustine County, came to me. He told me that 100 acres of land that I owned in San Augustine county had been sold for taxes on it, and asked me if I wanted to redeem it. My answer that I did not own any land to redeem. He then asked me if I didn't claim it would I give him a quit-claim to it, and I told him that I would give him or anyone a showing that I did not own the land.

"He told me that he had rather I would go before a Notary Public and give a showing that I did not own it. I remarked that that would call for a fee, and as I had not been out anything on the land; then he told me that he would pay the Notary Public fee, and too, he would pay for the time going to Bronson, the nearest Notary Public being there. I told him to come back a certain day to go

to Bronson; he did this, and I went before a Notary Public, Joe Crouch, and had a quit-claim deed drawn up for the land.

"When I went down to Mr. Crouch I carried the old deed to show him what tract of land it was. I told Crouch that I did not claim the land; he then fixed the quit-claim deed for me, and I carried it and the old deed back home. At the appointed time Lige Roberts came for the quit-claim deed, and I gave it to him.

"He then asked me what I was going to do with the old deed. I told him that I was not going to do anything with it, for it was not mine. He then asked why I didn't give it to him. I answered it was alright with me, and handed it to him."

It will be observed that Wright's deed to Mrs. Roberts is dated September 20, 1905, filed for record September 21, 1905, and that the old deed from Drawhorn to Wright is filed for record a few days later, September 28, 1905.

(b) There is a regular chain of conveyances from Mrs. Roberts into the Kirby Lumber Company.

█ As has been pointed out, the master is in error in finding Drawhorn to be the common source of title. Drawhorn, on December 22, 1879, executed the deed to Wright. A year later, Wright's title passes back to Drawhorn by their rescission of their trade. The receiver claims, not under Drawhorn, but under Wright by his deed to Mrs. Roberts, dated September 20, 1905. Wright is the common source of title. Temple Company holds the senior title out of Wright (through the rescission in 1880 of the deed from Drawhorn to Wright), and the receiver holds the junior title out of Wright (through the deed from Wright to Mrs. Roberts). Whether the rights of the parties are controlled by the common law, or by the Texas Registration Laws (Vernon's Ann. Civ.St. art. 6591 et seq.), the junior title of the receiver may prevail only by proof that there is in the receiver's chain of title from and under Wright one who was a bona fide purchaser for value of the land without notice of the claim of Drawhorn and Watson under Wright. And the receiver has the burden of proof. Houston Oil Co. v. Wilhelm, 182 F. 474, 478 (C.C.A.5th); Houston Oil Co. v. Williams Lumber Co., 182 F. 204 (C.C.A.5th); Thompson & Ford Lumber Co. v. Dilling-

ham, 223 F. 1000, 1001 (C.C.A.5th); Keith Lumber Co. v. Houston Oil Co., 257 F. 1, 7 (C.C.A.5th); Hines v. Perry, 25 Tex. 443, 453; Hawley v. Bullock, 29 Tex. 216, 221; Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S.W. 1149, and many cases which follow.

■ At the time (September 20, 1905) Wright executed the deed to Mrs. Roberts, under which the receiver claims, there were three deeds of record in Temple Company's chain of title, i. e., Drawhorn to Watson, Watson to Huntington, and Huntington to Downs. The only break in Temple Company's record chain of title was from Wright back to Drawhorn, such title having passed back to Drawhorn by rescission of the trade between Drawhorn and Wright. If the receiver's vendors examined, as they were required to do (Thompson & Ford Lumber Co. v. Dillingham, supra), the records of the county where the land was situated, they found these deeds and thereby learned of the senior title and the claim thereunder. Inquiry would have brought them full information regarding the deed to Wright, the reservation of the lien in the note, and the rescission of the trade between Drawhorn and Wright. Indeed it is quite clear that some of the receiver's vendors not only knew such facts, but induced Wright to execute the deed to Mrs. Roberts, and placed the old deed from Drawhorn to Wright of record. Others of the receiver's vendors are silent as to their knowledge of the facts. It is clear that neither the receiver nor those under whom he claims may have protection as a bona fide innocent purchaser for value without notice of the senior title.

■ 4. But if the master is correct that Drawhorn is the common source, and that the receiver holds under the senior title, and the Temple Company under the junior title out of Drawhorn, the receiver is no better off. While it is true that Temple Company would, under those circumstances, have to show some person in its chain of title to be a bona fide innocent purchaser for value without notice of the receiver's title, the receiver must first show title. He has not done so. It is certain that Wright, after the rescission of his trade with Drawhorn, had no title to the land, had no title to convey, and conveyed none to Mrs. Roberts, under whom the receiver claims. For the same reason, no title passed by the chain of deeds from Mrs. Roberts to the Kirby Lumber Company.

But the receiver says that in the deed from Drawhorn to Wright, the land was conveyed for a recited cash paid consideration, and that he and those under whom he claims bought on the faith of the correctness of such recitations, without notice or knowledge either of the note executed for the purchase money, or of the vendor's lien retained in the note to secure it, or of the agreement between Drawhorn and Wright to rescind their trade, or of the chain of title under Drawhorn, and that he is entitled to protection in equity.

I incline to the view (but do not hold) that since one holding under a senior title is not put on notice by a deed or other instrument in the chain of a junior title out of the same common source (White v. McGregor, 92 Tex. 556, 557, 50 S.W. 564, 71 Am.St.Rep. 875), that one holding under such a senior title may not claim protection because of the act of one holding under such a junior title. But it is not necessary to decide the point. Here, the act of no one in the chain of title to Temple Company caused the receiver and his vendors to buy from and under Wright. Drawhorn and Wright rescinded their trade as they had a right to do under the Law, and Drawhorn conveyed to Watson, and Watson to Huntington, and on down into Temple Company, and all placed their deeds of record and claimed openly. Not one of them caused a purchaser under receiver's chain of title to be misled. None of them were parties to having the old deed from Drawhorn to Wright resurrected and placed of record. Receiver's vendors did that. Receiver and his vendors are not being pricked by thorns from a tree planted by Temple Company and those in its chain of title, but from a tree planted by persons in receiver's own chain of title.

The report of the master will be affirmed, except that the receiver may have judgment against his warrantor, T. B. Roberts. Let a decree be prepared and presented accordingly.