## HARE et al. v. HENDERSON et al.

### No. 9462.

Circuit Court of Appeals, Fifth Circuit.

July 9, 1940.

W. D. Gordon and E. E. Easterling, both of Beaumont, Tex., for appellants.

K. W. Denman, of Lufkin, Tex., E. J. Fountain, of Houston, Tex., and E. L. Reid, of Orange, Tex., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover the title and possession of 640 acres of land in Orange County, Texas. The claim of title was: A deed from defendant's parents, dated October 11, 1902, to Frank Mills, reciting $6,-717, paid in cash and the reservation of a vendor's lien, to secure a note for $2,783; and a deed, dated October 24, 1902, from Mills to plaintiff Clara Hare, then Clara Brown. As to the vendor's lien note, it was alleged that it and all rights of the vendor on account thereof, had become barred and extinguished many years ago, but there was a tender in the alternative to do equity with regard to the note, and to any other just claims in favor of defendants that might be still existing against plaintiffs on account of the sale of the property and the reservation of the lien. The defenses were (1) that while the deed recited a cash consideration, no cash was paid but only a stock of worthless mer-

chandize fraudulently misrepresented by A. H. Brown, the plaintiff Clara Hare's first husband, at whose request and for whose benefit the deed was made to Mills and by him to plaintiff, and that nothing of value was ever paid for the land; and (2) that defendants as holders of the superior title, long ago had rescinded the sale, because of the 12 years failure to pay any part of the reserved vendor's lien note and the complete abandonment of the purchase. Defendants also alleged: That, thereafter defendants paid up the delinquent taxes on the land and have since paid taxes thereon, claimed the land as their own, and continuously exercised all the rights of dominion and ownership over it; whereas plaintiff, though taking deed to the property in 1902, subject to the payment of the vendor's lien had never recorded it or claimed under it but had wholly abandoned her obligations under the contract of purchase, and the land covered thereby; and that the bringing of the suit in 1938, after the third of a century abandonment, was brought about not by plaintiff's initiative, but as the result of advertisement and solicitation by interested persons whose interest had been directed to the land by the leasing of it for oil by the Sun Company.

The District Judge on full findings of fact sustained the defenses of rescission and abandonment and gave judgment for defendants. Plaintiffs appealing, insist that the findings do not support the judgment but require a judgment for them.

Briefly summarized, this is what was found: In 1902, following a newspaper advertisement, offering to swap merchandize for land, and correspondence between J. L. Henderson and A. H. Brown & Company, Henderson acquired a stock of merchandize from Brown & Company, and he and his wife by deed, dated October 11, 1902, and recorded in Orange County, October 23, 1902, conveyed the land in question to Frank Mills, as Brown's nominee. The deed recited a consideration of $9,500, $6,-717 cash, $2,783 secured to be paid by a note with a vendor's lien on the land expressed to secure the payment thereof. The note recited that it was given in part payment for the purchase money of the land, and that for the securing of it a vendor's lien was acknowledged. On October 24, 1902, Mills executed a deed to Clara Brown, the wife of J. H. Brown, but it was not recorded in Orange County until June 24, 1938. In 1904, Brown and his associates in the partnership were indicted for fraud on account of this and several other transactions and were convicted and sentenced to the penitentiary as to some of them.

After the execution of the deed from Mills to her, Clara Brown not only did not evidence claim to the land by recording her deed, but she did not evidence it in any other way, nor did she make or offer to make, any payment of principal or interest on the note or taxes on the land. Between the years 1909–1916, she was in Orange, Beaumont and Lufkin, Texas, but she never asserted any ownership or claim to the land or did anything in regard to it until certain advertisements of date, May 29, 1938, in the Kansas City Star, inquiring for her and her deceased husband's address and that of Mills, came to her attention. Then she contacted the lawyer whose name was signed to one of them and brought this suit.

On Henderson's side, these things were done about the land. On April 23, 1904, Henderson wrote to attorneys in Orange to bring suit on the note but nothing was done about it. On April 24, 1908, in reply to an inquiry from Brown, he wrote advising him that he would accept the face amount of the note, waiving the $800 of accumulated interest and release the land or would give Brown $50 for the return of all papers, including the deed to Mills. Henderson died July 13, 1908, his wife September 9, 1909, both intestate, and no administration was had on either of their estates.

On November 14, 1914, a suit was brought by Allen Henderson, and the guardian of the three youngest children, against Frank Mills for rescission of the contract of sale and there was a judgment divesting title out of Mills and vesting it in the plaintiffs. In that suit no attorney was appointed to represent Mills; no evidence was actually offered in the court and no statement of facts was filed. After the entry of the judgment, the Hendersons continuously exercised acts of dominion and ownership over the land, executing oil leases, selling timber and paying taxes. The land was assessed as unknown from 1902 to 1918, but the record shows payment of back taxes by the Hendersons and the issuance to them in 1921, of a redemption certificate as to taxes for the years 1902–1918, and receipts for taxes for some of the later current years.

Appellants insist that the judgment against Mills was invalid for want of compliance with the statutory requirements of

a suit by publication and if valid as to Mills, it was without effect as to plaintiffs because they were not parties thereto, and that the decisions [1] the District Judge relied on for his holding that the acts of the Hendersons asserting their superior title, coupled with the inaction amounting to abandonment on the part of plaintiffs, were completely effective to fully revest title in them, have been in effect overrul¹·¹ or superseded by Yates v. Darby, 133 Tex. 593, 131 S.W.2d 95.

Appellees insist that Yates v. Darby did not overrule or supersede those cases, it expressly affirmed them and that under the principles there announced and approved, the judgment below was demanded.

We agree with appellees. Yates v. Darby dealt with an attempted agreed rescission made, between vendor and vendee, in February, 1933, after a judgment had been fixed against the interest of the vendee. The court properly held that Articles 5520–5523, Revised Civil Statutes, 1925, as amended in 1931, Vernon's Ann.Civ.St.Tex. arts. 5520, 5522, providing "purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law", completely protected a third party, such as the judgment lien holder, against action by the vendor either upon the notes or by rescission in or out of court.

In doing so, the court did not overrule or supersede the decisions, holding that as between the parties, the lien limitation statutes as enacted in 1905 and amended in

---

[1] "Conclusions of Law." "Under the facts of record and by reason of the reservation of the vendor's lien in the deed of conveyance from the Hendersons to Mills for the payment of the purchase money note referred to therein, the sale was an executory one.

"Lundy v. Pierson, 67 Tex. 233, 2 S.W. 737; McKelvain v. Allen, 58 Tex. 383, 387.

"And subject to rescission by the Hendersons upon failure of the payment of the purchase money.

"A deed such as here involved which expressly retains the vendor's lien to secure the payment of notes given for the purchase price, is construed in Texas to mean that the superior title is with the vendor until the notes have been paid. In order to make such a deed a perfect conveyance of the title the record must also show payment of the notes and a release of the vendor's lien.

"Havis v. Thorne Inv. Co., Tex.Civ. App., 46 S.W.2d 329; Burton v. Dumestre, 5 Cir., 86 F.2d 947.

"The Hendersons elected to and did rescind the contract of purchase. Regardless of the legal effect of the judgment as such in the suit filed in 1914, it coupled with the other facts, evidences an intention upon the part of the original grantors and their heirs to rescind, and as such is binding upon all parties herein.

"I further conclude that the record here shows that the vendee had actually abandoned the contract, or at least had so acted, as to create the reasonable belief on the part of the vendors and their heirs that she had abandoned it, and that under such circumstances the vendors and their successors were entitled to rescind without notice of their intention, notwithstanding the part performance by the vendee. Miller v. Horn, Tex.Civ. App., 149 S.W. 769; Evans v. Bentley, 9 Tex.Civ.App. 112, 29 S.W. 497, 36 S.W. 1070.

"As to the claim made by plaintiffs under Articles 5694 and 5695, Vernon's Sayles Annotated Civil Statutes of 1914, that the lien and superior title were barred by limitation, I conclude that the Supreme Court of Texas in construing these Articles has decided that they do not affect the rights of the vendor as holder of the superior legal title but only bar his right of action thereon when affirmatively asserted by him in the Courts.

"Bunn v. City of Laredo, Tex.Com. App., 245 S.W. 426, holds directly that a defensive claim under the superior title such as defendants assert in this case, does not fall within the bar of these statutes.

"See also Benn v. Security Realty & Development Co., Tex.Civ.App., 54 S.W.2d 146.

"It appearing that in the deed from Frank Mills purporting to convey the land in controversy to Clara E. Brown, now Hare, that it was expressly stated that 'It is hereby agreed and stipulated that there is a vendor's lien note against the above described property for (2783 dollars) drawing 5 per cent interest and due on or before 3 years from Oct. 11, A. D. 1902.' The rescission of the contract by which the Hendersons sold to Mills is binding upon Mrs. Hare, the subvendee, who bought with notice of the lien of the Hendersons."

1913,[2] which were in force when the Hendersons, within the time fixed by the statute for court action, rescinded the contract of purchase and took back the land, did not destroy the vendor's superior title or prevent his effective reassertion of it by rescission against his vendor's default and particularly against his abandonment.

It expressly approved and reaffirmed the long and unbroken line of decisions affirming the vendor's right of protection by a timely rescission against a defaulting vendee and his successors in title. Bunn v. City of Laredo note 2, supra; Benn v. Security Realty & Development Co., note 1, supra; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329. Nothing in it in any manner impairs or defeats the application here of the principle laid down and applied in these cases and in Thompson v. Robinson, 93 Tex. 165, 54 S.W. 243, 77 Am.St.Rep. 843, that where the vendor has rescinded the contract and there has been long and complete abandonment by the vendee so that there are no equities in his favor, he will not be accorded the right to sue for the land either with or without the unpaid purchase money, but will be left where the action of rescission and his own conduct have left him, without right or title to the property. It would be difficult to imagine a case more devoid of equities than this one.

To allow plaintiffs, after nearly a third of a century of complete abandonment, and 25 years after timely rescission of the contract has occurred, to come in now, because of the supposed advance in value of the property, and take it from defendants, would be contrary to the uniform current of Texas authority. The language of the court in the Bunn case in sustaining the right of the vendor applies with peculiar force here.

The judgment was right. It is affirmed.

---

2 "Art. 5694. The right to recover any real estate by virtue of a superior title retained in any deed of conveyance heretofore or hereafter executed, or in any vendor's lien note or notes heretofore or hereafter executed, given for the purchase money of such real estate, shall be barred after the expiration of four years from the maturity of such indebtedness, and if suit is not brought for recovery of such real estate, or for the foreclosure of the lien to secure such note or notes within four years from the date of the maturity of such indebtedness, or if suit is not brought within such time for the recovery of the land by the original vendor, or his transferee, or for the foreclosure of the lien given to secure such notes, the purchase money therefor shall be conclusively presumed to have been paid in any suit to recover such land or to enforce a lien thereon, and the lien reserved in any such notes and deeds conveying the land shall cease to exist four years after the note or notes have matured. * * *

"5695. * * * providing those owning the superior title to land retained in any deed of conveyance or his transferee and those subsequently acquiring such superior title by transfer, shall have twelve months after this Act takes effect within which to bring suit for the land if their claim to the land is not otherwise invalid and unless such suit is brought within twelve months after this act takes effect, they shall be forever barred from bringing suit to recover the same. * * *"

"We think the conclusion follows that the rights of the vendor as holder of the superior title were not affected by the 1913 act, but that the only effect of that act as regards the superior title was to bar the right of action thereon when asserted in the courts. We think, therefore, that the trial court and Court of Civil Appeals correctly held that the city's right to forfeit the land in the manner prescribed in the ordinance was not destroyed or affected by the 1913 act, and that when the city resorted to such remedy and repossessed itself of the lands, its title and possession were unassailable by those claiming under the unfulfilled contracts of sale. The city has not sought in this suit to recover the land upon its superior title, but the action was brought against the city to oust it of its possession and defeat its rights exercised in compliance with the contract of sale and without resort to the courts. It is true that there are circumstances under which the right to resort to the superior title may be lost, and frequently cases have arisen in which courts of equity have denied to the vendor recovery under the superior title, where it would be inequitable to apply the harsh remedy of rescission without making some fair adjustment with the purchaser. No such case, however, is presented here."

Bunn v. City of Laredo, Tex.Com.App., 245 S.W. 426, 429.